[No. A043659. First Dist., Div. Three. Jan. 8, 1990.]

BARRY WILLIAMS et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Ballati, Carbone & Drago and Mark R. Carbone for Plaintiffs and Appellants.

Rogers, Joseph, O'Donnell & Quinn, Susan M. Popik and Suzanne M. Mellard for Defendants and Respondents.

OPINION

**STRANKMAN, J.**—After their homeowners' insurance policy was canceled by State Farm Fire and Casualty Company (State Farm), plaintiffs Barry Williams and Dolores Williams filed a complaint against State Farm and its agent, Stephen D. Combs. Among plaintiffs' allegations was that the cancellation violated the state's earthquake insurance law (Ins. Code, § 10081 et seq.), which provides in part that no policy of residential property insurance may be issued in this state unless the named insured is offered coverage for earthquake loss.[1] Summary judgment was entered in favor of defendants, and plaintiffs have appealed. We affirm the judgment.

I

The parties stipulated to the following facts in the trial court. In early August 1985, Dolores Williams contacted defendant Combs, an agent for State Farm, asking that the company provide insurance on a new home plaintiffs were buying in Corte Madera. At the time, State Farm had an underwriting policy which provided that houses built on a hill were ineligible for earthquake coverage. Combs inspected the home on August 20, and determined that it would not meet State Farm's underwriting requirements for earthquake coverage because of its hillside location.

---

[1] Unless otherwise indicated, all further statutory references are to the Insurance Code.

Nevertheless, on August 21, a State Farm application for homeowners' insurance was mailed to plaintiffs. Printed on page 2 of the application was the offer of earthquake insurance required by section 10083.[2] Sometime between August 22 and 26, Barry Williams came to Combs's office with the application and said he wanted earthquake coverage. Combs replied that State Farm would not issue earthquake coverage on the property because of its hillside location, and recommended that Williams go to another insurer if he wanted earthquake coverage. Williams responded that he did not want to do so. He expressed his past satisfaction with State Farm and insisted that Combs issue him a residential insurance policy with earthquake coverage. After telling Williams that State Farm would probably cancel the policy, Combs agreed to submit the application so that plaintiffs would have insurance coverage for the close of escrow.

On about September 11, Combs sent an evidence of insurance form to the mortgagee, and also sent the completed application and a photograph of the property to State Farm's regional office. The five-member underwriting committee which reviewed the application voted unanimously to reject the risk. On about October 15, a State Farm operations supervisor informed plaintiffs by letter that their policy was canceled, effective November 30, 1985, because hillside property does not meet the company's underwriting requirements for earthquake coverage.

On about December 2, plaintiffs obtained a residential insurance policy with earthquake coverage from another insurer. Plaintiffs never made any claim to State Farm for any damage or loss to their property, and never suffered or were threatened with any such loss while that company's policy was in effect.

Plaintiffs then filed a complaint against State Farm and Combs. They alleged that defendants canceled the policy because plaintiffs accepted the earthquake coverage, and that the cancellation was a violation of section 10081 et seq. and a breach of the duty of good faith pursuant to section 790 et seq. Plaintiffs also alleged that defendants' conduct was an unfair business practice in violation of Business and Professions Code section 17200 et seq. Plaintiffs alleged that as a result of defendants' conduct, they suffered emotional distress and were required to pay a higher premium to obtain insurance. Plaintiffs sought general, special, and punitive damages, as well as treble damages and attorney fees pursuant to Business and Professions Code section 17082.

---

[2] In a declaration submitted in opposition to the summary judgment motion, Dolores Williams stated that when she received the application, the box next to the statement, "I reject earthquake insurance," was marked with an "X."

Summary judgment was entered in favor of defendants. Plaintiffs moved for reconsideration or a new trial on the ground that newly enacted legislation affected the case; that motion was denied.

## II

Sections 675 through 679.6 generally regulate the cancellation of insurance policies on certain personal and real property, including single family residences, among other residential real property.[3] All notices of cancellation must be in writing. (§ 677.) Section 676 provides that after a new policy has been in effect for 60 days, a notice of cancellation is effective only if based on certain limited grounds, such as nonpayment of premium or discovery of fraud by the named insured in obtaining the insurance or pursuing a claim under the policy. The necessary implication of the 60-day provision in section 676 is that the insurer's right to cancel within that first 60 days is not similarly restricted.[4] As defendants point out, the initial 60-day period facilitates the insurance practice of authorizing an insurance agent to bind insurance temporarily pending the insurer's assessment of the character of the risk and determination whether to accept the policy application. (See 2 Couch on Insurance (2d ed. 1984) § 14.26 et seq., p. 48 et seq.; see generally *Ransom* v. *Penn Mutual Life Ins. Co.* (1954) 43 Cal.2d 420, 424 [274 P.2d 633].) Although defendants argue that the issuance and subsequent cancellation of plaintiffs' policy was in compliance with the foregoing statutes, plaintiffs contend that, notwithstanding these general statutes, the cancellation violated section 10081 et seq. and breached the duty of good faith and fair dealing.

When the Legislature enacted the earthquake insurance law, section 10081 et seq., in 1984, it explained its intent in an uncodified section: "It is the intent of the Legislature in enacting this act to promote awareness of earthquake insurance by residential property owners and tenants by requiring insurers to offer that coverage. It is the intent of the Legislature to make clear that loss caused by or resulting from an earthquake shall be compensable by insurance coverage only when earthquake protection is provided through a policy provision or endorsement designed specifically to indemni-

[3] Section 675 provides in pertinent part, ". . . [T]his chapter shall apply to policies of insurance . . . insuring . . . [¶] (a) Loss of or damage to real property which is used predominantly for residential purposes, and which consists of not more than four dwelling units."

[4] Specific statutory exceptions to the general rule stated in section 676 may limit the insurer's right to cancel within the first 60 days. (See, e.g., § 676.1 [arbitrary cancellation of a homeowners' policy solely on the basis that insured is engaged in a licensed family day care business will subject the insurer to administrative sanctions].) As will be discussed *infra,* the insurer's right to cancel is also limited by the covenant of good faith and fair dealing implied in every insurance contract. (See, e.g., *Spindle* v. *Travelers Ins. Companies* (1977) 66 Cal.App.3d 951, 956-959 [136 Cal.Rptr. 404].)

fy against the risk of earthquake loss, and not through policies where the peril of earthquake is specifically excluded even though another cause of loss acts together with an earthquake to produce the loss." (Stats. 1984, ch. 916, § 2, p. 3073; see generally, Bragg, *Concurrent Causation and the Art of Policy Drafting: New Perils for Property Insurers* (1985) 20 Forum 385, 397-398; Comment, *Earthquake Insurance: A Proposal for Compulsory Coverage* (1984) 24 Santa Clara L.Rev. 971.)

Section 10088 precludes recovery for loss caused by an earthquake, absent a policy or endorsement specifically covering earthquake loss.[5] Other sections of the chapter require insurers either to offer earthquake coverage to a homeowner or to forego insuring the property altogether. Section 10081 provides in pertinent part, "No policy of residential property insurance may be issued or delivered . . . in this state by any insurer unless the named insured is offered coverage for loss or damage caused by the peril of earthquake as provided in this chapter. . . ." (See also § 10083, specifying the language of the offer.)

Section 10082 sets forth the scope of the required coverage: "The offer . . . shall include coverage against risk of loss or damage from the peril of earthquake on all property insured by the policy of residential property insurance. The earthquake coverage shall be in accordance with the insurer's rules and rating plan, *provided, however, that nothing contained in this chapter shall require an insurer to issue a policy of residential property insurance except in accordance with the insurer's usual underwriting standards. However, such standard shall not permit an insurer to provide a policy of residential property insurance unless the offer of coverage required by this chapter is made.*" (Italics added.)

■ Statutes which are in pari materia must be read together and harmonized, as if constituting one law. When one statute deals generally with a particular subject and another addresses the subject with more detail and specificity, the two statutes must be read together, so that each is given effect if possible. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965 [131 Cal.Rptr. 172].) ■ As originally enacted, the earthquake insurance law contemplated the possibility of cancellation of a residential property insurance policy by an insurer after

---

[5] In pertinent part, section 10088 provides: ". . . [I]n the absence of an endorsement or an additional policy provision specifically covering the peril of earthquake, no policy which by its terms does not cover the peril of earthquake shall provide or shall be held to provide coverage for any loss or damage when earthquake is a proximate cause regardless of whether the loss or damage also directly or indirectly results from, or is contributed to, concurrently or in any sequence by any other proximate or remote cause, whether or not covered by the policy. . . ."

acceptance of an offer of earthquake coverage. Section 10086 provides in part, "If an offer of earthquake coverage is accepted, the coverage shall be continued at the applicable rates and conditions, *provided the policy of residential property insurance is not terminated by the named insured or insurer. . . .*" (Italics added.) Nevertheless, that law was silent as to the circumstances under which an insurer was entitled to terminate or cancel such a policy. Therefore, as statutes must be read together, that right was necessarily governed only by the limitations expressed in the more general statutes dealing with cancellation, sections 675 through 679.6, and by the implied covenant of good faith and fair dealing.

Section 10082 of the earthquake insurance law unambiguously permits an insurer to utilize its usual underwriting standards in assessing the hazards involved and determining whether to issue a policy. The stipulated facts establish that before the earthquake insurance law went into effect and at all times relevant to this action, State Farm had an underwriting standard which provided that houses built on hillsides were ineligible for earthquake coverage. Within 60 days of issuance of their homeowners' policy, plaintiffs were notified in writing that it had been canceled because their home was ineligible for coverage under that standard. Thus, unless section 10082 does not mean what it says, the cancellation was consistent with all then-applicable statutory requirements, including the earthquake insurance law.

First, plaintiffs attempt to explain away the plain language of section 10082 by arguing that when the Legislature used the terminology, "usual underwriting standards," it meant that each company could continue to use only the underwriting guidelines applicable to residential property insurance in existence when the earthquake insurance law was enacted. Plaintiffs insist that the Legislature did not mean to permit a company with existing underwriting standards for earthquake endorsements to be able to continue to apply those standards under the new law.

██ However, ordinarily courts may not read into a statute an exception not expressed by the Legislature (*Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 237 [104 Cal.Rptr. 558]), and nowhere in section 10082 or elsewhere in the earthquake insurance law is the authorization for the use of usual underwriting standards limited or qualified as plaintiffs suggest. Furthermore, plaintiffs' argument about legislative intent ignores the last sentence of section 10082, which declares that the underwriting standards shall not permit an insurer to provide a policy of residential property insurance unless the offer of coverage required by the chapter was made. In other words, an insurer cannot use its underwriting practices to write a homeowners' policy but refuse to provide earthquake coverage. ██ Read in its entirety, the section permits an insurer to

utilize its underwriting practices to determine whether it is willing to provide earthquake coverage; however, if a home does not satisfy those standards, the insurer is completely foreclosed from providing a policy of residential insurance for that home. If the reference to "usual underwriting standards" was intended to mean only standards which did not pertain to earthquake coverage, there would have been no need to forbid use of those standards to refuse earthquake coverage.

Next, plaintiffs rely on *Cal. State Auto. etc. Bureau* v. *Downey* (1950) 96 Cal.App.2d 876 [216 P.2d 882] (hereafter *Cal. State Auto.*) to argue that it would be inconsistent with the purpose of the earthquake insurance law to allow an insurer to use its underwriting standards to reject a request for earthquake insurance. In *Cal. State Auto.*, the court considered an attack by the California State Automobile Association (CSAA) on the newly enacted assigned risk law (§ 11620 et seq.), which required all auto insurers in the state to participate in insuring certain persons otherwise unable to obtain insurance. Among other arguments, CSAA asserted that it should be permitted to continue its "underwriting policy" of insuring only members of its association, because section 11621 of the act provided: "Insofar as possible, assignments under the plan shall be consistent with the scope of territorial operations, and underwriting policies of each subscriber." The appellate court rejected the argument, reasoning in part that on its face, section 11621 did not compel consistency with all underwriting policies. Even if CSAA's members-only policy was an underwriting policy, that policy would be directly opposed to the purpose, intent, and spirit of the assigned risk law. (*Cal. State Auto., supra*, at pp. 907-908.)

Plaintiffs' reliance on *Cal. State Auto.* is misplaced, and the case is inapposite. First and most obvious, as already noted, the Assigned Risk Law expressly stated that insurers' underwriting policies should be considered "[i]nsofar as possible"; in contrast, the authorization of the use of usual underwriting standards in section 10082 is without similar qualification. Second, other more significant differences exist between the two legislative schemes. With the enactment of the assigned risk law, the Legislature chose to compel all auto insurers doing business in the state to share in insuring certain high risk drivers. If membership in an arbitrarily selected group were to be recognized as a proper base of underwriting policy, any company could evade legitimate assignments on that basis. (*Cal. State Auto, supra*, 96 Cal.App.2d at p. 908.) On the other hand, the legislative response to the problems of insuring for earthquake loss was not to establish a mandatory assigned risk scheme. Instead, the Legislature apparently sought to encourage insurers to provide earthquake coverage by permitting the use of standard underwriting practices to determine which risks to accept, but at the

same time prohibiting the writing of any homeowners' policy if those practices resulted in a denial of earthquake coverage.

■ Finally, plaintiffs point out that in 1988, the Legislature added section 10086.5 to the earthquake insurance law, forbidding the cancellation of a residential property insurance policy after an offer of earthquake coverage is accepted "solely because the insured has accepted that offer of earthquake coverage . . . ." (Stats. 1988, ch. 279, § 1, No. 5 West's Cal. Legis. Service, p. 811, No. 2 Deering's Adv. Legis. Service, p. 1108.) Plaintiffs contend that although section 10086.5 was not in effect when their insurance was canceled, the section was a clarification rather than a change in the law which confirms that the Legislature never meant to permit insurance companies to offer earthquake insurance without intending to provide it.

"When the Legislature enacts a new law on the same subject as a prior law or makes a material amendment or change to an existing statute, we presume a legislative purpose to change existing law. [Citations.]" (*People* ex. rel. *Smith* v. *Parkmerced Co.* (1988) 198 Cal.App.3d 683, 690 [244 Cal.Rptr. 22]; see *In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].) As we have already discussed, as originally enacted, the earthquake insurance law contemplated the termination or cancellation of a policy of residential insurance by the insurer, but imposed no limitations on the insurer's right to cancel. With the enactment of section 10086.5 in 1988, the Legislature some four years after the original enactment spoke for the first time to limit that right in a manner other than as dictated by section 675 et seq. That new limitation was unquestionably a change, not a clarification of existing law.[6]

Statutes which change rather than clarify existing law are presumed to operate prospectively, absent a clear legislative expression that retroactive application was intended. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1208 [246 Cal.Rptr. 629, 753 P.2d 585]; *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828-829, fn. 8 [114 Cal.Rptr. 589, 523

---

[6]Our conclusion is based on the plain language of the statutes, not on the out-of-context bits of legislative history upon which plaintiffs rely. (See *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1138 [203 Cal.Rptr. 886] [when legislative materials offer no clue as to precise meaning of statutory language, court relies on fundamental rules of statutory construction].) The Senate Insurance, Claims and Corporations Committee report on Senate Bill No. 1976 cited by plaintiffs is not only internally inconsistent; it is also inconsistent with the report of the Assembly Committee on Finance and Insurance concerning the same legislation. The Senate report does state in pertinent part that the legislation clarifies legislative intent, but that same report also notes the Attorney General's opinion that no express provision then in effect made it illegal to cancel a policy when the homeowner elected earthquake coverage. Nothing in either report suggests that such cancellation was forbidden under the earthquake insurance law as originally enacted, and neither states that the new provision was declarative of existing law.

P.2d 629].) As section 10086.5 changed the law without any indication of legislative intent that it should have retroactive effect, it is inapplicable to the present case. Therefore we need not attempt to analyze its impact, if any, on section 10082 and the insurer's right to utilize its usual underwriting standards in writing homeowners' policies.

Plaintiffs also contend the cancellation violated the implied covenant of good faith and fair dealing which limits an insurer's statutory right to cancel a contract. (See, e.g., *Spindle* v. *Travelers Ins. Companies, supra*, 66 Cal.App.3d at pp. 956-959.) However, because that contention rests on the assertion that the cancellation was prohibited by the earthquake insurance law, our conclusion that no statutory violation occurred is dispositive of the issue. As we have discussed, the cancellation was permitted by and consistent with the controlling statutes. The stipulated facts do not support a claim of any concealed intent to disadvantage plaintiffs; instead, those facts establish that Combs initially bound the insurance so that plaintiffs would have coverage for the close of escrow, and told Williams the policy would probably be canceled because of the location of the property.

In summary, the trial court correctly concluded that defendants did not violate the earthquake insurance law or the implied covenant of good faith and fair dealing when it canceled plaintiffs' homeowners' insurance policy.

### III

Plaintiffs contend even if State Farm did not violate section 10081 et seq., it engaged in misrepresentation. Plaintiffs assert that before sending them the application, Combs knew that their home could not qualify for earthquake coverage, and knew that if they accepted the offer, the policy would be canceled. They urge that in reliance on the offer, they accepted the coverage, only to have their policy canceled.

The allegations and the argument ignore the stipulated facts. Whatever the reason that the insurance application was initially sent to the Williamses, the stipulated facts indicate that when Barry Williams came to Combs's office with the application and said he wanted earthquake coverage, Combs advised him that State Farm would not issue earthquake coverage on the property because it did not meet the company's underwriting standards. When Williams insisted that he wanted State Farm insurance, Combs agreed to submit the application so that plaintiffs would have insurance coverage for the close of escrow, but told Williams that State Farm would probably cancel the policy. The stipulated facts establish that plaintiffs' present characterization of the events is inaccurate, and that there was no misrepresentation.

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.