[Civ. No. 48759. Second Dist., Div. Four. Feb. 8, 1977.]

DAVID K. SPINDLE, Plaintiff and Appellant, v.
TRAVELERS INSURANCE COMPANIES et al.,
Defendants and Respondents.

## COUNSEL

Tredway, Brandmeyer & Ward, John A. Torribio and Stanley M. Ward for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and John H. Sharer for Defendants and Respondents.

## OPINION

JEFFERSON (Bernard), J.—Plaintiff David K. Spindle, M.D., filed a first amended complaint for money damages (bad faith) against defendants Travelers Insurance Companies, a corporation, and the Phoenix Insurance Company, a corporation. Defendants demurred to this complaint upon the ground that plaintiff had failed to state a cause of action. The demurrer was sustained by the trial court, without leave to amend, and a judgment of dismissal was accordingly entered. Plaintiff has appealed.

█ The appellate standard of review to be applied in the case of an appeal from a judgment granted after a demurrer has been sustained without leave to amend is well-established: "In our examination of the complaint we are guided by the well settled principles governing the testing of its sufficiency by demurrer: A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]" (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

It appears from plaintiff's amended complaint that he is a physician and surgeon duly licensed to practice medicine in the State of California. More particularly, Dr. Spindle is a specialist in neurosurgery, and an employee and shareholder of the Southeast Neuro-Medical Group, Inc., a California professional corporation, located in Downey, California. Defendants are described as foreign corporations authorized to do business as insurers in the State of California; plaintiff alleges that defendant Phoenix is "a member and subsidiary" of defendant Travelers.

Plaintiff Spindle is also a member of the Southern California Physicians Council, a nonprofit association of approximately 7,000 physicians and surgeons in Southern California. He alleges that in December 1973, defendant Phoenix entered into a "written Master Contract" with the council whereby Phoenix agreed to provide malpractice insurance coverage to council members. A copy of that contract is attached to the amended complaint as exhibit "A" and is incorporated therein by reference. Council members had previously been insured by Hartford Fire Insurance Company, but that contract expired December 31, 1973.

Pursuant to the "Master Contract," Dr. Spindle was issued a policy of malpractice insurance on or about January 1, 1974, evidenced by certificate 014363. That certificate is attached to plaintiff's amended complaint as exhibit "B," and incorporated therein by reference.

Plaintiff alleges that during the period of negotiation between the council and defendant Phoenix for the master contract, he is informed and believes that defendant Phoenix represented to the council that if its members "complied with the conditions precedent" and did not have excessive claims filed against them, defendant Phoenix would keep the members' malpractice policies in full force and effect.

While Dr. Spindle had been insured by Hartford, a number of malpractice claims had been filed against him. However, defendant Phoenix accepted Dr. Spindle's premium—an annual premium of $7,452—and, upon defendant Phoenix' request, plaintiff advised defendant in writing of all claims that had previously been made against plaintiff of which he was aware.

From January 1974, until July 3, 1975, no malpractice claims were made against plaintiff. On that latter date, however, defendant Phoenix advised plaintiff in writing of its intention to cancel plaintiff's malpractice insurance as of August 3, 1975. The "Notice of Cancellation" is attached to plaintiff's amended complaint as "exhibit C" and incorporated therein by reference.

Plaintiff charges that by this action defendant Phoenix breached "its implied obligation to plaintiff [to act in good faith] . . . did not act in good faith and did not deal fairly with plaintiff," but cancelled his policy "willfully, with malice, and with the intent and purpose to

hurt, harm and injure the plaintiff in the practice of his profession." Plaintiff further alleges that the act of cancellation was intended to coerce and intimidate other members of the council in their dispute with defendant Phoenix over the allowable rate of premium increases provided for in the master agreement.

It is plaintiff's contention that defendant was seeking a premium increase of 141 percent while members of the council were resisting this percentage increase and contending that the master contract between the council and defendant Phoenix limited such increase during the period from January 2, 1975 to January 1, 1976, to 15 percent. In effect, plaintiff alleges that his malpractice insurance policy was cancelled to serve as an example to other members so they would agree to the greater premium increase sought by defendant, the only insurer in a position to insure them.

Plaintiff alleges that he was informed by Norman Aronson, head of the professional claims department of defendant Travelers that his insurance would not have been cancelled had the council agreed to the 141 percent premium increase.

Plaintiff further alleges that, at the time of cancellation, defendant Phoenix was aware that plaintiff would be unable to practice medicine and surgery in hospitals without malpractice insurance. He also states that the wrongful cancellation of his insurance was "intended as a threat and a warning" to every member of the council, *i.e.,* that the members could each expect similar treatment if they opposed the premium increase.

Plaintiff alleges that the cancelled insurance was not available at competitive rates from solvent, nonhazardous insurance carriers; that plaintiff has been forced to secure replacement malpractice insurance from a carrier that has been deemed "undercapitalized" by the Commissioner of Insurance of the State of California, at a premium 350 percent higher than that paid to defendant Phoenix. Plaintiff asserts that as a result of the cancellation by defendant Phoenix, plaintiff has been damaged in his professional reputation, and that he has suffered emotional distress. Plaintiff's amended complaint seeks damages for plaintiff's emotional distress in the amount of $10,000,000, punitive damages in the same amount, and special damages of $7,053.25, representing the difference in the premium plaintiff had to pay his new

insurer for coverage from August 26, 1975 to January 1, 1976 as opposed to that which he would have been obligated to pay defendant Phoenix for the same period of time.

In asserting by their demurrer that plaintiff's amended complaint fails to state a cause of action, defendants rely on what they regard as their "absolute" right, set forth in the contract with the council and in the contract with plaintiff, to cancel the policy of insurance for any reason upon which they chose to act. We note that the master contract, exhibit A to the amended complaint, provides: "No provision of this Agreement [dealing with the circumstances under which the Council and the defendant Phoenix could terminate it] shall restrict the rights of cancellation specified in the policies of insurance issued pursuant to this Agreement." We note also that plaintiff's particular policy provides: "This policy may be cancelled by the *named insured* by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the *Company* by *mailing* to the *named insured* at the address shown in this policy, written *notice stating when,* not less than 30 days thereafter, such *cancellation shall be effective.* The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the *named insured* or by the Company shall be equivalent to mailing." (Italics added except for "named insured.")

Plaintiff's contention below, and upon this appeal, is that, these cancellation provisions notwithstanding, his policy also included a good faith undertaking by defendant Phoenix not to cancel the policy for a malicious reason—a reason unrelated to his professional performance as a neurosurgeon. It is plaintiff's contention that public policy requires the rule of law that precludes an insurance carrier from possessing the right to cancel a policy for a malicious reason such as the wrongful objective of making an "example" of plaintiff, the insured, during the struggle between the council and its members and defendant Phoenix over the problem of premium increases. Defendants reject the notion that public policy requires, as plaintiff contends, that the legal principle of good faith and fair dealing between an insurer and its insured be extended to include a limitation on an insurer's right to cancel malpractice insurance policies issued to its insured.

We have not discovered any California decisional law authority expressing a rule of law relative to a bad faith cancellation of a policy of medical malpractice insurance. Plaintiff has formulated his theory of a right to recover damages on the principle that public policy does—or should—dictate a legal remedy when such a cancellation occurs. For this view, plaintiff relies on the federal case of *L'Orange* v. *Medical Protective Company* (6th Cir. 1968) 394 F.2d 57. In this case, Dr. L'Orange, a dentist, had his malpractice insurance policy cancelled by defendant Medical Protective after 25 years of uninterrupted coverage, assertedly for revenge, because he testified for a plaintiff in a malpractice action brought against another dentist, who was also insured by Medical Protective. A substantial verdict was returned by the jury in the malpractice action in which L'Orange testified as a witness. The *L'Orange* court held that plaintiff L'Orange's complaint had alleged a good cause of action against the defendant insurer because cancellation of a policy to stifle testimony of witnesses was an act which violated the public policy of the State of Ohio.

Defendants argue that the *L'Orange* case is poorly reasoned and should not be regarded as a precedent in the case at bench.

Despite the absence of an expressed "public policy" basis pursuant to existing California decisional law, it is clear that the right of insurers to cancel insurance policies is not absolute in this state. Sections 660 through 679.73 of the Insurance Code deal with the subjects of cancellation and failure to renew particular kinds of insurance policies such as automobile liability policies and property loss policies. Section 661 sets forth and limits specifically the grounds upon which an automobile liability or collision policy may be cancelled, and section 676 specifies and limits the grounds for cancellation of property loss policies. In addition, section 679.71[1] declares that real or personal property loss insurance policies may not be cancelled because of the insured's marital status, sex, race, color, religion, national origin, or ancestry. These sections reflect legislative policy limiting the "absolute" right of insurance policy cancellation.

In addition, there is the area of developed case law in California which pertains to the matter of bad faith in carrying out the terms of a contract. ▇▇▇ While defendants term plaintiff's allegations of bad faith as "absurd," we note again that in a demurrer situation, we are

---

[1]Added by Statutes 1973, chapter 772, section 1, page 1385.

compelled to accept plaintiff's allegation as true for the purpose of weighing the sufficiency of the amended complaint against a demurrer thereto, and need not concern ourselves with any problems of proof that plaintiff Spindle may encounter in a trial.

■■ "There is an implied covenant of good faith and fair dealing in *every contract* that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. [Citation.] This principle is applicable to policies of insurance." (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198].) (Italics added.) Breach of that duty has resulted in an insurer's liability in situations involving the insurer's failure to settle third party claims (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]) and to settle the claim of its own insured (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103]). That liability "sounds in tort, . . . and an insured may recover for all detriment resulting from such violation, including mental distress." (*Silberg, supra,* 11 Cal.3d 452, at pp. 460-461.)

We are unable to discern any logical basis for distinguishing between an insurer's conduct in settling a claim made pursuant to the policy and that involved in an insurer's cancelling a policy if bad faith conduct is the basis for the cancellation. The situations are similar in that the ultimate result of the conduct of the insurer effectively deprives the insured of the benefit of his bargain, *i.e.,* the coverage for the period for which he paid a premium. Cancellation provisions of a contract are subject to the covenant of good faith and fair dealing just as are other provisions of a contract. No plausible reason exists why cancellation provisions of a contract should be treated differently from other contractual provisions insofar as application of the implied covenant of good faith and fair dealing is concerned. It has been stated that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785, 49 A.L.R.2d 496].)

In the instant case, the deprivation to the insured of the benefit of his bargain is greater than average due to the lack of competition in the field of malpractice insurance alleged in the amended complaint.

Conspiratorial conduct on the part of insurers to avoid the contractual liability they undertake is not countenanced in California (see *Gruenberg*

v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]), and the evolvement of the doctrine of the implied covenant of good faith and fair dealing *is* an expression of *public policy* in our state. We hold that this same doctrine is applicable to subject an insurer to liability to its insured for cancelling a malpractice insurance policy in accordance with permissible terms of the cancellation provisions of the policy, if the reasons for such cancellation are such as to make the cancellation a violation of the implied covenant of good faith and fair dealing. Plaintiff's amended complaint, therefore, has stated a cause of action against defendants.

The judgment (order of dismissal) appealed from is reversed.

Kingsley, Acting P. J., and Dunn, J., concurred.