**MID PLAINS REEVES, INC.,**
Appellant,

v.

**FARMLAND INDUSTRIES, INC., and**
**Enerfin, Inc., Appellees.**

No. 08–88–00230–CV.

Court of Appeals of Texas,
El Paso.

Feb. 1, 1989.

Appellee Farmland Industries, Inc.'s Motion for Rehearing Granted in Part and Denied in Part March 15, 1989.

Appellee Enerfin, Inc.'s Motion for Rehearing Denied March 15, 1989.

---

Charles E. Nicholson, Law Offices of Pat Maloney, P.C., San Antonio, for appellant.

David L. Orr, McGinnis, Lochridge & Kilgore, Austin, and D. Gib Walton, and Michael W. Mengis, Vinson & Elkins, Houston, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a summary judgment denying recovery of damages in a suit involving a contract for the purchase of natural gas. We reverse and remand.

Farmland Industries, Inc., entered into a contract with Lone Star Gas Company in 1975, to provide up to fifty-five MMcf of natural gas per day. In 1986, it was providing only forty MMcf of gas and sought to obtain an additional fifteen MMcf of gas to sell under the 1975 contract. Farmland representatives contacted Mid Plains Reeves, Inc., to try to procure the additional gas which it could deliver to Lone Star at a gas processing plant in Sterling County.

Mid Plains procured the gas desired and the parties entered into a Gas Purchase Contract dated May 15, 1987. It provides in part:

Seller hereby commits and dedicates to the performance of this Contract the first 15 MMCF [sic] per day of gas production from casinghead gas made available from the Lands and Leases more fully shown on Exhibit "A" attached hereto,....

By letter dated May 19, 1987, Farmland wrote to Mid Plains concerning the May 15 agreement to provide that:

Farmland's performance under the captioned contract is dependent upon full and complete performance by Lone Star Gas Company under that certain residue contract dated August 29, 1975 between Farmland and Lone Star.

In the event that Lone Star does not perform in accordance with the terms and provisions of the August 29, 1975 contract, the rights and obligations under the captioned May 15, 1987 contract between the parties hereto, shall be suspended.

An officer of each of the companies signed their names at the bottom of the letter to indicate their approval.

By letter dated June 17, 1987, the president of Mid Plains wrote back to Farmland and said:

I have signed your letter dated May 19, 1987 and Mid Plains understands that the above referenced contract is negated should Lone Star Gas Company refuse to accept any volume of gas from Farmland. However, should Lone Star accept fifteen MMcf per day or any lesser volume, then the rights of Mid Plains under the above referenced Gas Purchase Agreement will prevail.

An officer of Farmland signed to accept the terms of this letter on July 2, 1987.

When the additional fifteen MMcf of gas was supplied, Lone Star would not accept delivery. Mid Plains sued Farmland and Enerfin, Inc., who had purchased the Farmland operations and was selling gas to Lone Star. Mid Plains contends Farmland breached its gas purchase agreement and was guilty of fraud for misrepresentations it made about enforcing its agreement with Lone Star, and that Enerfin was liable for tortious interference with a business relationship in persuading Farmland to disregard its contractual obligation to purchase gas from Mid Plains. The summary judgment denied recovery to Mid Plains and it appeals.

In its first point of error, the Appellant urges the trial court erred in granting the motions for summary judgment because there were material fact issues as to the cause of action for breach of contract. All parties argue that the contract is unambiguous. They agree that the contract and supplemental letters must be read together and construed as one instrument. But, in doing so they arrive at totally different views as to their respective obligations.

First, Farmland says the letter of May 19, 1987, conditions its obligations to buy gas from Mid Plains "upon full and complete performance by Lone Star Gas Company" and that Lone Star did not agree to

full and complete performance, i.e., buying fifty-five MMcf of gas. Therefore, it claims it has no obligation to purchase gas from Mid Plains.

Second, Mid Plains says the letter of June 17, 1987, does let Farmland off the hook if Lone Star does not accept "any volume of gas from Farmland." But, if Lone Star does accept any volume, the first fifteen MMcf per day must be gas supplied by Mid Plains to Farmland. Since Lone Star bought some gas, Mid Plains claims its contract should be enforced.

We must try to determine the attention of the parties from the language they used. Certainly, each contention finds support in the two letters signed in May and June. But, clearly their final writing in June does not condition the agreement upon Lone Star's acceptance of "new gas" or "more than forty MMcf of gas" or "gas Farmland obtains from Mid Plains" but, it says the contract is negated if Lone Star should refuse to accept "any" gas from Farmland. Lone Star did not do that. The next sentence spells out a specific volume and says the agreement is enforceable if Lone Star takes all or part of fifteen MMcf per day.

■ Each of the letters states it is in reference to the May 15, 1987 contract. There is no question as to the meaning of the original contract. It provides for the sale by Mid Plains to Farmland of fifteen MMcf of gas per day. Undoubtedly, Farmland became concerned about buying gas that Lone Star might not take under its contract which provided for fifty-five MMcf of gas. Farmland then chose to modify the contract and make its performance subject to "full and complete performance by Lone Star...." Parties may modify a contract just as they originally make a contract. *Rhoads Drilling Company v. Allred*, 123 Tex. 229, 70 S.W.2d 576 (1934); *Moser Company v. Awalt Industrial Properties, Inc.*, 584 S.W.2d 902 (Tex.Civ.App.—Amarillo 1979, no writ).

■ In this case, the May letter agreement was signed by both parties and no question is raised about consideration for the new agreement which limited Farmland's obligation. But, that was not the

end of the modifications. In the June letter to Farmland, the president of Mid Plains acknowledged signing the May 19 letter which he said would condition Farmland's obligation if Lone Star refused to accept "any volume of gas...." The next sentence reflects another modification, this time of the "full and complete performance by Lone Star" to a new provision for performance of "15 MMcf per day or any lesser volume,...." Again, the parties were free to modify a prior modification and they did so when Farmland signed to accept the terms in the June letter. And again, no issue is raised as to consideration for this modification.

■ We conclude that the contract with the final modification is not ambiguous. The last modification supersedes and controls any prior conflicting provision and makes Farmland obligated to buy under its contract with Mid Plains if it sells any volume of gas to Lone Star. This result is consistent with the rule set forth in Williston on Contracts, Third Edition, sec. 624 (1961), which says if the clauses in a contract present irreconcilable inconsistencies where the first clause is in general terms and the latter is particular, the latter clause controls. Here, the first letter spoke in general terms of full performance by Lone Star and the latter spoke of a specific fifteen MMcf of gas to be purchased by Lone Star. Point of Error No. One is sustained.

■ In its next point of error, Mid Plains asserts that there is also a fact issue as to its cause of action for fraud. It is the contention of Appellant that a representative of the Appellee promised that Farmland would sue Lone Star if the gas which Mid Plains obtained was not purchased by Lone Star. Jay Lauderdale did testify by deposition that he made such a statement. But, no action was ever taken by Farmland to force Lone Star to accept the gas in question. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony. *Spoljaric v. Percival*

*Tours, Inc.,* 708 S.W.2d 432 (Tex.1986). At the time the statement was made, no such decision had been made concerning suit against Lone Star. We believe the evidence which was developed by depositions was sufficient to raise a fact issue as to the essential elements of a cause of action for fraud. See *Spoljaric v. Percival Tours, Inc.,* and *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983).

■ When a promise is made, the promisor, at least by necessary implication, states that he then has a present intention to perform, and if such intention does not actually exist at that time, a false statement has been made. *Turner v. Biscoe,* 141 Tex. 197, 171 S.W.2d 118 (1943). Although there is some evidence to refute the claim of fraud and particularly with regard to the issue of reliance, a fact issue is raised and this Court may not decide the issue as a matter of law. Point of Error No. Two is sustained.

■ The contention, in the last point of error, is that the trial court erred in granting summary judgment for Enerfin because of fact issues existing as to the cause of action for tortious interference with a business relationship. In order to establish such a cause of action, a plaintiff must prove (1) that the defendant maliciously interfered with the contractual relationship; and (2) that such conduct was without legal justification or excuse. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105 (Tex. 1984). The case law suggests that this cause of action arises from willful and intentional conduct which is a proximate cause of the plaintiff's damage. *Armendariz v. Mora,* 553 S.W.2d 400 (Tex.Civ. App.—El Paso 1977, writ ref'd n.r.e.); *Herider Farms—El Paso, Inc. v. Criswell,* 519 S.W.2d 473 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.).

■ In order to be entitled to summary judgment, the burden of proof is on the moving party. For a defendant, as the moving party, to prevail, it must establish as a matter of law that a fact required to establish at least one element necessary to the plaintiff's cause of action did not exist, or establish as a matter of law a defense to the alleged cause of action. *Menchaca v. Menchaca,* 679 S.W.2d 176 (Tex.App.—El Paso 1984, no writ). In this case, the motion by Enerfin is supported by an affidavit of Donald Keller, the president of the company. He acknowledges being involved with the negotiations with Farmland and having conversations concerning the agreement with Lone Star and the contract with Mid Plains "dated May 15, 1987." He states that neither he nor any agent, employee or representative of Enerfin ever requested or instructed Farmland to breach any binding contractual obligations with a third party.

That affidavit will not support summary judgment for two reasons. First, the contract of May 15, 1987, is not alone the controlling issue in this case. It was amended by two subsequent letter agreements which made significant changes from the terms appearing in the original agreement. Second, he limits his statement to a breach of "any *binding* contractual obligation...." [Emphasis added]. It is obvious from the discussion under the points of error, that there is a belief that the Mid Plains' contract was not a binding obligation. Farmland construes it as only an option.

■ Since the evidence does not establish a lack of interference as a matter of law, there was no burden on the Appellant to present rebuttal evidence; but, it did. Some of the rebuttal evidence was inadmissible hearsay. Charles Long, by deposition, testified that Farmland's attorney, Richard Alsup, had made certain statements as to what Donald Keller said about the Mid Plains' contract. The argument is made that this is a "second layer" hearsay statement. We agree and further note the statement Long said he heard came not from the one against whom the admission is offered. Alsup's statements are offered against Enerfin, but Alsup was not an agent or employee of Enerfin, he was the attorney for Farmland. Whatever Alsup told Long about statements made by Keller are not admissible against Enerfin. Point of Error No. Three is sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

## OPINION ON MOTION FOR REHEARING

As set forth in our original opinion, we sustained a point of error as to a cause of action for breach of contract and a cause of action for fraud in representing that Farmland would sue Lone Star if the gas which Mid Plains obtained was not purchased by Lone Star. In its motion for rehearing, Farmland contends that since the appeal by Mid Plains did not attack that part of the summary judgment which denied recovery on the other claims or cause of action, there should be no remand for a trial on those issues. We agree.

 In addition to the two claims just noted, Mid Plains also sought to recover on claims that (1) Farmland fraudulently represented that the Lone Star contract was extremely solid, (2) Mid Plains was an intended third-party beneficiary of the contract between Farmland and Lone Star, and (3) Farmland breached a duty of good faith to Mid Plains. The summary judgment denied recovery on all claims. As noted above, we sustained points of error on two of the claims. No complaint was made as to the other three. As to the causes of action as to which there was no complaint, the judgment has become final and we may not reverse in the absence of properly assigned error. *The Prudential Insurance Company of America v. J.R. Franclen, Inc.*, 710 S.W.2d 568 (Tex.1986).

The motion for rehearing of Farmland Industries, Inc., is granted in part and in part overruled. The motion for rehearing of Enerfin, Inc., is overruled.