Charles Milton HOPKINS, Appellant,

v.

HIGHLANDS INSURANCE COMPANY
and Goodman–Watson Insurance
Agency, Inc., Appellees.

No. 08–91–00303–CV.

Court of Appeals of Texas,
El Paso.

Sept. 2, 1992.

Rehearing Overruled Nov. 4, 1992.

Malcolm McGregor, Valli Acosta, El Paso, for appellant.

John A. Grambling, Grambling/Darnell, L.L.P, Steven L. Hughes, Mounce & Galatzan, El Paso, for appellees.

Before OSBORN, C.J., BARAJAS, J., and PRESSLAR, C.J. (Retired), Sitting by Assignment.

## OPINION

BARAJAS, Justice.

This is an appeal from a summary judgment granted in favor of Appellees Highlands Insurance Co., and Goodman–Watson Insurance Agency, Inc. on an action alleging violations of the Deceptive Trade Practices Act, tortious interference with a contractual relationship and breach of the duty of good faith and fair dealing. We reverse in part and affirm in part.

## I. SUMMARY OF THE EVIDENCE

Appellant, Charles Milton Hopkins, was employed as a truck driver for the Magnolia Coca–Cola Bottling Company (Magnolia). Magnolia previously secured liability insurance from Highlands Insurance Co., (Highlands) through the Goodman–Watson Insurance Agency, Inc. (Watson Agency) to cover losses resulting from accidents involving trucks owned and operated by Magnolia. The insurance policy became effective on February 1, 1988, and was for a term of one year. Shortly thereafter, Highlands elected to exclude Hopkins from policy coverage effective March 10, 1988. As a result of his exclusion from coverage, Magnolia fired Hopkins on March 25, 1988.

On appeal, Highlands asserts the decision to exclude Hopkins was based on his driving record, as reflected on reports received from the Texas Department of Motor Vehicle Records (MVR). Further, Highlands contends the decision to exclude Hopkins was made in an effort to protect its legal and financial interests. Highlands additionally cites United States Department of Transportation (DOT) regulations to support its decision to exclude Hopkins from coverage. Hopkins asserts both Highlands and Watson Agency applied a different, and more stringent, standard to him in determining to exclude him from coverage under the policy. Further, Hopkins alleges that Highlands and Watson Agency failed to terminate other drivers who possessed driving records that were just as bad or worse than his own.

## II. STANDARD OF REVIEW

In reviewing the entry of a summary judgment, this Court must determine whether the successful movant in the trial court carried its burden of showing that there was no genuine issue of material fact and that it was entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). A summary judgment that disposes of the entire case is proper only if, as a matter of law, the non-movant could not succeed upon any of the theories pleaded. *Houston Building Service, Inc. v. American General Fire & Cas. Co.*, 799 S.W.2d 308, 309 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

In deciding whether or not there is a disputed fact issue that would preclude

the entry of a summary judgment, evidence favorable to the non-movant is to be taken as true and, in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49; *see also City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex.1979).

### III. MOTION FOR SUMMARY JUDGMENT

In Point of Error No. One, Appellant asserts the affidavit of Diana Gillespie is not proper summary judgment evidence because it is not based on personal knowledge. The affidavit recites that it is based on personal knowledge; although, at an earlier deposition, the affiant stated she lacked memory of many of the same facts to which she later swore to in the affidavit. The affiant readily admitted her lack of memory and confusion, but cited a thyroid problem as contributing to such lack of memory and confusion. The record reflects that Hopkins objected to Gillespie's affidavit on two grounds. The first was on the basis of lack of personal knowledge of the affiant. The second was that the affidavit contained legal conclusions.

■ In a summary judgment context, the Texas Supreme Court has clearly stated that objections to a motion for summary judgment must be in writing and before the trial court in order to permit the appellate court to decide whether "the issue was actually presented to and considered by the trial judge." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 671, 677. Additionally, a ruling by the trial court must be obtained by the objecting party to preserve any error for appellate review. Tex.R.App.P. 52. *See Sem v. State*, 821 S.W.2d 411, 414 (Tex.App.—Fort Worth 1991, n.w.h.); *Utilities Pipeline v. American Petrofina*, 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ); *See also Manoogian v. Lake Forest Corporation*, 652 S.W.2d 816, 819 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

We have reviewed the record and find it silent as to whether Hopkins obtained a ruling on either of his objections to the summary judgment evidence. Thus, although Hopkins properly objected to alleged defects in Appellees' summary judgment evidence, his failure to secure a ruling on those objections effectively waives his complaints on appeal. Accordingly, Point of Error No. One is overruled.

■ In Point of Error No. Two, Hopkins asserts the trial court erred in granting summary judgment based on Appellees' unplead affirmative defense of legal justification. Appellees point to the fact that the affirmative defense of legal justification was raised in their First Amended Original Answer, filed three days after Hopkins' response to their motion for summary judgment. Appellees further assert the pleading is adequate to raise the affirmative defense.

The Texas Supreme Court has recently held that an unpleaded affirmative defense may serve as the basis for a summary judgment when it is raised in the motion for summary judgment for the first time, and the opposing party does not object to the lack of a Rule 94 pleading in either its written response or before the rendition of judgment. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). Appellant's failure to direct the trial court's attention to the absence of the pleading of the affirmative defense of legal justification bars raising any such complaint for the first time on appeal. *Roark*, 813 S.W.2d at 495. Thus, Appellant's Point of Error No. Two is overruled. In light of this disposition of Point of Error No. Two, we need not address the issue of whether the Appellees' First Amended Original Answer timely or adequately raised the affirmative defense of legal justification.

### IV. THEORIES OF RECOVERY

In his third point of error, Hopkins asserts the trial court erred in granting summary judgment in Highlands' and Watson Agency's favor insofar as issues of material fact existed as to each of his theories of recovery. As noted, Hopkins filed suit against Highlands Insurance Company and Goodman–Watson Insurance Agency, Inc.

alleging violations of the Deceptive Trade Practices Act, tortious interference with a contractual relationship and breach of the duty of good faith and fair dealing.

### A. Deceptive Trade Practices Act

As previously mentioned, Hopkins asserted a violation of the Deceptive Trade Practices Act. Specifically, Hopkins contended Appellees violated Section 21.-21(4)(1) of the Texas Insurance Code and that such violation serves as the basis of the Deceptive Trade Practices Act claim as per Tex.Bus. & Com.Code Ann. § 17.-50(a)(4) (Vernon 1987). Appellees sought and obtained summary judgment on the alleged violations of the Deceptive Trade Practices Act which were asserted by Hopkins. In particular, Appellees contended that Hopkins admitted that no representations were made to him by Appellees, and further, that Hopkins was not a "consumer" as a matter of law, as defined in Section 17.45 of the Deceptive Trade Practices Act. In accepting Appellees' contention, we find that Appellees have successfully disproved at least one element of Hopkins' cause of action and, thus, summary judgment was proper. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Rayos v. Chrysler Credit Corp.*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

In an action brought pursuant to Texas Insurance Code art. 21.21(4)(1), the plaintiff must show that the insurer made false or misleading representations of the policy contract. Consequently, the making of a representation is an essential element of a violation of Article 21.21(4)(1).

In the instant case, the trial court found that no oral representations were made to Hopkins, nor did Hopkins ever discuss the insurance policy with employees of either Highlands or Watson Agency. The trial court's findings are amply supported by Hopkins' deposition where he readily admitted neither Highlands nor Watson Agency ever made any representations to him. Further, the court found that Hopkins was not aware of *any* representation made by either Highlands or Watson Agency.

Hopkins' testimony admitting no representations were made to him conclusively established the negation of an essential element of his cause of action for violation of the Deceptive Trade Practices Act by Highlands and Watson Agency. *See Bradley*, 659 S.W.2d at 34. Accordingly, the summary judgment as to the alleged Deceptive Trade Practices Act violation is affirmed. In light of the above discussion, this Court does not need address the issue of whether Hopkins is a consumer under the Deceptive Trade Practices Act.

### B. Tortious Interference with a Contractual Relationship

Hopkins bases his claim of tortious interference with his contractual relationship with Magnolia on his exclusion from the insurance policy. It was that exclusion of coverage that led to his termination by Magnolia.

The elements of tortious interference with a contractual relationship are: (1) the existence of a contract (2) the willful or intentional act of interference (3) that was a proximate cause of damages and (4) actual damage or loss occurred. *Mid Plains Reeves v. Farmland Industries*, 768 S.W.2d 318, 322 (Tex.App.—El Paso 1989, writ denied); *Armendariz v. Mora*, 553 S.W.2d 400 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

At the outset, we note the trial court found that Watson Agency did not "make any determination as to what drivers would or should be excluded under the policy issued to Magnolia." Moreover, the record supports the fact that Watson Agency merely served as a messenger in relaying Highlands' decisions to its insured, Magnolia.

Insofar as the evidence supports the trial court's finding that Watson Agency did not commit the acts complained of, they cannot be liable for tortiously interfering with the contractual relationship that Hopkins enjoyed with Magnolia. Thus, summary judgment as to Watson Agency for the

claim of interference with a contractual relationship is affirmed.

■ On the other hand, the record does reveal that Highlands made all decisions pertaining to coverage. Highlands, however, did not assert Hopkins failed to meet any of the requisite elements to establish his claim; rather, it relies solely on the affirmative defense of legal justification to absolve itself of liability for interference with a contractual relationship. Highlands, citing *Deauville Corp. v. Federated Dept. Stores, Inc.*, 756 F.2d 1183, 1196 (5th Cir. 1985), asserted that one cannot recover for tortious interference with a contractual relationship when actions taken are those which are based on efforts to protect one's own legitimate interests. In that regard, the trial court found Highlands had established the defense of legal justification.

■ Interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possessed an equal or superior interest to that of the plaintiff in the subject matter. *Black Lake Pipe Line Company v. Union Construction Company, Inc.*, 538 S.W.2d 80, 91 (Tex.1976); *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex.App.—El Paso 1988, writ denied). In *Maynard*, this Court held, that the factors to consider in determining whether interference is improper include the following:

(a) the nature of the actor's conduct;

(b) the actor's motive;

(c) the interests of the other with which the actor's conduct interferes;

(d) the interests sought to be advanced by the actor;

(e) the social interests (in one party's actions and the others contract);

(f) the proximity or remoteness of the actor's conduct to the interference; and

(g) the relations between the parties.

*Maynard*, 752 S.W.2d at 721, citing Restatement (Second) of Torts, § 767 (1979).

In the instant case, the central issue is whether or not Highlands established a bona fide exercise of its rights under the insurance contract. In attempting to establish its affirmative defense of legal justification, Highlands asserts Hopkins did not meet accepted guidelines for risk; thus, they were justified in excluding him from coverage under the liability policy. Accordingly, a brief review of the insurance policy issued by Highlands in favor of Magnolia, as well as pertinent administrative regulations allegedly used by Highlands to terminate Hopkins from the policy's coverage is in order.

In the instant case, the insurance policy defines "insured" to include those truck drivers employed by Magnolia. The truck drivers are listed individually and, thus, have individual coverage for bodily injury and property damage caused by the individual driver; for expenses in defending any claims; by an uninsured/underinsured motorist endorsement; by a personal injury protection endorsement (including loss of income for the individual driver); and by a medical and funeral expense endorsement. The insurance policy provided coverage for each of the individual drivers until such time that the individual driver was specifically excluded. Although Diana Gillespie stated that Hopkins was not a named insured, there is evidence that the names of all drivers were submitted to Highlands along with the application for insurance. Consequently, at the time the liability policy was issued, all drivers were covered. Highlands then determined which drivers to exclude from coverage pursuant to its guidelines. In that respect, Highlands asserts it excluded Hopkins from coverage to protect its own financial interest.

The internal guidelines utilized by Highlands as summary judgment evidence support Hopkins' assertion that he was excluded from coverage of the policy under more stringent standards than other fellow co-workers. Those guidelines provide as follows:

If the Motor Vehicle Record shows that a driver has

(1) *More than three (3) moving violations* in the past three (3) years; or

(2) More than two (2) accidents where he or she was at fault; or

(3) Any combination of accidents (regardless of fault) and moving violations that total greater than three (3), that driver *should be considered for exclusion* for coverage.

If the Motor Vehicle Record shows that a driver has been convicted of:

(1) Driving under the influence of drugs;

(2) Driving under the influence of alcohol;

(3) Reckless driving; or

(4) If the operator's license is currently suspended, that driver *should be excluded* from coverage.

[Emphasis added].

The records from the Texas Department of Motor Vehicles on which Highlands relied to exclude Hopkins from coverage listed only three moving violations, each for speeding. As such, Hopkins failed to meet the criteria for automatic exclusion from coverage under the terms of the second paragraph above. More to the point, Hopkins' driving record from the Department of Motor Vehicles failed to rise to the level where he "should be considered for exclusion" under the first paragraph, as those guidelines clearly specify that it takes *"more than three"* moving violations to reach that level.

We find that Highlands failed to follow its own internal guidelines in determining whether or not to exclude Hopkins from coverage. Moreover, we find that Highlands applied a more stringent standard to Hopkins than its own guidelines permitted. Accordingly, we find that Highlands was not, as a matter of law, justified in excluding Hopkins from coverage. While Highlands can exclude from coverage those individuals who pose a high risk, they may not arbitrarily exclude those individuals whom they *already* insure, contrary to their own internal guidelines.

Highlands additionally alleged that pursuant to the United States Department of Transportation regulations, Hopkins was disqualified from operating as a truck driver. While the notice of termination of employment that was given to Hopkins by Magnolia did cite to violation of those regulations, Highlands failed to present summary judgment evidence that violations of those regulations were considered by them in the determination of whether to exclude Hopkins from the liability policy. Further, the judgment of the trial court states Hopkins was excluded from the liability policy pursuant to Highlands' internal guidelines. The judgment is silent as to any purported violations of the Department of Transportation regulations.

Further, assuming that the referenced Department of Transportation regulations were in fact used to determine whether or not to exclude Hopkins, a material question of fact then exists. The regulations require suspension of any truck driver who may have three or more convictions for "excessive speeding" on their record within a three year period. 49 C.F.R. § 383.-51(c)(2)(ii) (1989). However, at the time Highlands excluded Hopkins from coverage, the regulations contained no definition of "excessive speeding".[1] A material fact issue exists insofar as Appellees failed to present summary judgment evidence which would serve to establish that each of Hopkins' traffic offenses constituted "excessive speeding" as a matter of law.

We find that the affirmative defense of legal justification has not been proven as a matter of law since the guidelines consulted by Highlands in determining whether to exclude Hopkins does not support the cancellation of the policy as to Hopkins. We further find that the United States Department of Transportation regulations, to the extent that those regulations may have formed a basis for the decision to exclude Hopkins from coverage, created a question of material fact as to what constitutes "excessive speed" which is best resolved by a fact finder. Accordingly, the summary

---

1. We note that on October 3, 1989, subsequent to Hopkins being excluded from the policy, a definition for excessive speeding was published in the Federal Register, Volume 54, No. 190. Excessive speeding is now defined as traveling in excess of 15 m.p.h. over the posted speed limit. In the instant case, each of Hopkins' speeding tickets were for traveling over the speed of 65 m.p.h. but under the speed of 68 m.p.h. in a 55 m.p.h zone.

judgment as to the alleged tortious interference with a contractual relationship as to Highlands is reversed.

### C. Breach of the Duty of Good Faith and Fair Dealing.

Once again we note that the record establishes that Watson Agency did not commit the acts complained of and, thus, cannot be held liable for tortiously interfering with the contractual relationship which Hopkins enjoyed with Magnolia. Likewise, the evidence establishes that Watson Agency was not responsible for any of the acts which Hopkins claims amounted to a breach of good faith because Watson Agency merely served as a messenger in relaying Highlands' decisions to its insured, Magnolia. Accordingly, the summary judgment for breach of the duty of good faith and fair dealing as to Watson Agency is affirmed.

The duty of good faith and fair dealing is a "result of a special relationship between the parties governed or created by a contract." *William H. McGee & Co., Inc. v. Schick,* 792 S.W.2d 513, 521 (Tex. App.—Eastland 1990, writ granted), *citing Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165, 167 (Tex. 1987); *See also Viles v. Security National Insurance Company,* 788 S.W.2d 566, 567 (Tex.1990). Highlands argues that since the insurance contract, which was purchased by Magnolia, was purchased for its own protection, there is no contract with Hopkins from which the duty of good faith flows, as required. We disagree.

The insurance policy specifically defines "insured" to include those truck drivers which have been employed by Magnolia, of which Hopkins was one. In *Aranda v. Insurance Company of North America,* 748 S.W.2d 210 (Tex.1988), the Supreme Court extended the duty of good faith and fair dealing to flow to the injured worker in a worker's compensation situation, even though the employee was not the purchaser of the insurance or the named insured. In explaining how the employee is owed the duty of good faith and fair dealing, the Court stated that worker's compensation

insurance involves a "three-party agreement." *Aranda,* 748 S.W.2d at 212. Thus, "the contract between a compensation carrier and an employee creates the same type of special relationship under other insurance contracts." *Id.* The Court employed a three-party analysis to determine that the insurance was in reality purchased for the benefit of the employee. The arena of worker's compensation insurance is analogous to the truck fleet coverage in the case on review.

In another analogous case, *St. Paul Guardian Insurance Co. v. Luker,* 801 S.W.2d 614, 616 (Tex.App.—Texarkana 1990, no writ), a homeowner's policy was issued to the father of the plaintiff for coverage against fire loss for the home and the contents. Although the father owned the home, the plaintiff resided there. After a fire, the father filed a claim for the value of the house, and plaintiff filed a claim for the value of the contents. The insurance company denied coverage to the plaintiff, and the plaintiff sued alleging breach of the duty of good faith and fair dealing. The insurance company asserted that no duty is owed to persons not named in the policy. *Id.* at 618. The court rejected this contention and determined that where a person purchases insurance for the benefit of another, both the contracting party and the third party are owed the duty of good faith and fair dealing. *Id.* Specifically, the court held "that when an insurer agrees to insure a third party beneficiary under the terms of an insurance contract, it owes the same duty of good faith and fair dealing to the third party as it does to the purchaser of the insurance." *St. Paul Guardian Insurance Co.,* 801 S.W.2d at 618–19.

From the cases cited above, we conclude that Hopkins is indeed owed a duty of good faith and fair dealing by Highlands, as he is a third-party beneficiary under the policy. *Cf. Kennedy v. Sale,* 689 S.W.2d 890 (Tex.1985). Having determined that Highlands owed Hopkins the duty of good faith and fair dealing, the issue then becomes whether any such duty was breached.

A worker's compensation claimant who asserts that a carrier has breached the duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda,* 748 S.W.2d 210 at 213.

■■■■ In applying the standard adopted by our Supreme Court in *Aranda* to the facts in the instant case, the test for breach of duty of good faith and fair dealing as to cancellation of insurance coverage is: an insured who asserts that an insurer has breached the duty of good faith and fair dealing by cancelling insurance coverage must establish:

(1) the absence of a reasonable basis for cancellation of coverage; *and*

(2) that the insurer knew or should have known that there was not a reasonable basis for cancellation of such coverage.

These elements balance the right of an insurer to *cancel* insurance coverage in order to protect their business interest, by terminating coverage for those insureds that purport to be high risk, and the contractual duty to provide the insured with coverage for the period of the insurance contract. In short, insurers may terminate coverage upon a showing of a reasonable basis to protect their interests. However, absent a reasonable basis, insurers will be liable for the breach of the duty of good faith and fair dealing.

■■■ The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have cancelled insurance coverage, once coverage has commenced. As discussed above, Hopkins had only three traffic tickets in the preceding three years. All of the citations were issued prior to the issuance of the insurance policy covering him. Thus, Highlands did not establish, as a matter of law, that there was a reasonable, objective basis for cancelling the coverage based on the application of its own internal guidelines.

The second element will be met by establishing that the insurer actually knew or should have known that there was no reasonable basis for cancellation of insurance coverage. Highlands should have known that Hopkins' exclusion from policy coverage was contrary to its own guidelines. In the case on review, Highlands, as movant for summary judgment, did not negate this element as a matter of law.

As to Point of Error No. Three, we sustain in part and overrule in part. Therefore, we affirm the summary judgment granted in favor of Goodman–Watson Insurance Agency. In regard to Highlands Insurance Company, we affirm the summary judgment in part and reverse and remand in part. Specifically, summary judgment is affirmed as to the Deceptive Trade Practices Act cause of action and reversed and remanded as to the remaining two causes of action; i.e., tortious interference and breach of good faith and fair dealing.

OSBORN, Chief Judge, concurring.

I concur. In doing so I acknowledge that we are extending the rule announced in *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165 (Tex.1987) and *Aranda v. Insurance Company of North America,* 748 S.W.2d 210 (Tex.1988) beyond its application by the Texas Supreme Court. In each of those cases, the application of the duty of good faith and fair dealing related only to a failure of an insurance company in the processing and payment of claims. The basis for the imposing of such a duty exists in this case as much as it did in those two cases. There is a disparity of bargaining power and an exclusive control by the carrier in determining whether or not to provide coverage. The question is whether the duty should extend beyond the handling of claims and should it extend to providing coverage or, as in this case, limiting coverage after it had been initially extended.

The Court in *Arnold* noted that "without such a cause of action insurers can arbi-

trarily deny coverage...." 725 S.W.2d 165 at 167. Likewise, without such a duty, insurers can arbitrarily cancel coverage. In *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm.App.1929, holding approved) the Court concluded that the carrier had a duty as "viewed from the standpoint of the assured" to decide if a case should be settled. 15 S.W.2d 544 at 547. Although a carrier could not be expected to decide whether to cancel coverage based solely on the viewpoint of the assured, because no assured would ever want to be cancelled, at the same time the carrier should not be permitted to arbitrarily cancel coverage with no duty being owed to its assured.

In *Unocal Corporation v. Superior Court and Harbor Insurance Corporation*, 198 Cal.App.3d 1245, 244 Cal.Rptr. 540 (2nd Dist.1988), the court noted that the right of insurance companies to cancel policies is not absolute and that cancellation provisions in an insurance policy are subject to the covenant of good faith and fair dealing. That decision followed the earlier holding in *Spindle v. Travelers Insurance Companies*, 66 Cal.App.3d 951, 136 Cal.Rptr. 404 (2nd Dist.1977) where the court said:

> We are unable to discern any logical basis for distinguishing between an insurer's conduct in settling a claim made pursuant to the policy and that involved in an insurer's cancelling a policy if bad-faith is the basis for the cancellation.

136 Cal.Rptr. 404 at 408.

I would hold that there is no duty to initially provide coverage and that a carrier may accept or reject a request for insurance on any standard it might choose. But, once that coverage is provided, it may not indiscriminately cancel that coverage during a policy period. Once a policy is issued, it must exercise a duty of good faith and fair dealing with regard to any decision it makes to terminate coverage before the coverage automatically expires. In this regard, I would recognize an absolute right to cancel for non-payment of premiums or a violation of policy provisions which place some duty upon the assured.