Crossland v. Anchor Glass 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-061-CV

        JOHN HARVEY CROSSLAND AND
        JULIETH CROSSLAND,
                                                                                       Appellants
        v.

        ANCHOR GLASS CONTAINER
        CORPORATION,
                                                                                       Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 90-00-00714-CV
                                                                                                    

O P I N I O N
                                                                                                    

          John Harvey and Julieth Crossland (the Crosslands) bring this appeal contesting the
granting of a summary judgment in favor of appellee Anchor Glass Container Corporation (Anchor
Glass). We affirm.
I. Procedural and Factual Background
          On December 14, 1988, Anchor Glass and HAG Steel Contractors (HAG Steel), entered
into a contractual agreement whereby HAG Steel would prepare for shipment three large machines
used for the melting of glass, known as forehearths, and move them from Anchor Glass' facility
in Corsicana to another Anchor Glass facility located in New York. In an effort to fulfill its
contractual obligations, HAG Steel contracted with Robert DePriest, a trucking contractor, to pick
up one of the forehearths in Corsicana and deliver it to the Anchor Glass facility in New York.
          In the morning of December 18, John Crossland, an employee of Robert DePriest, arrived
in Corsicana to pick up one of the forehearths. After a forehearth was placed on the back of the
bed of the truck, a winch truck was used by some employees of HAG Steel to pull it forward on
the truck. Once these employees determined that the forehearth was properly situated on the
truck, Crossland left the premises and drove to a nearby business that weighs motor vehicles. His
truck was weighed and Crossland discovered that the weight of the load over his back axle was,
according to the applicable road regulations, 8,000 pounds too heavy. Apparently uncertain what
to do about the problem, Crossland telephoned the Anchor Glass factory. Someone from Anchor
Glass informed him that four or five men were present at the factory that night and that these men
would be able to help him. Accordingly, he returned to the factory.
          When Crossland arrived at the factory, several HAG Steel employees determined that the
forehearth needed to be shifted forward on the truck to more evenly distribute the weight of the
load between the front and rear axles; however, the winch truck was no longer on the premises. 
Nevertheless, these HAG Steel employees decided to shift the load by using chains, "come-alongs," and binding tools. Crossland and John Albert Vaughn, a security guard employed by
Corsicana Security, a business with whom Anchor Glass had contracted to provide security
services for its factory, watched nearby. As the HAG Steel employees struggled with the chains,
come-alongs, and binders, something snapped under the pressure, flew through the air, and struck
Crossland in the head, injuring him severely. The Crosslands then decided to sue for
compensation for Crossland's injuries.
          The Crosslands, for an unknown reason, chose not to sue HAG Steel, instead bringing their
lawsuit solely against Anchor Glass. They asserted two causes of action: one, that Anchor Glass
was liable under the doctrine of respondeat superior for the negligent acts of the HAG Steel
employees in moving the forehearth and, two, that Anchor Glass was liable under a theory of
premises liability for providing inadequate lighting to illuminate the HAG Steel employees' work
area. Anchor Glass moved for summary judgment under both causes, contending that it could not
be responsible under respondeat superior because it did not exercise sufficient control over the
actions of HAG Steel's employees to render it liable and that it could not be liable under the
Crosslands' premises liability theory because the proximate cause of Crossland's injuries was not
inadequate lighting at its facility but the decision of HAG Steel to move the forehearth with chains,
come-alongs, and binders. The trial court granted summary judgment for Anchor Glass under
both causes of action.
          The Crosslands bring three points of error: first, they argue that a genuine issue of fact
exists about whether Anchor Glass possessed sufficient control over HAG Steel's employees to
render it liable under respondeat superior for any negligence in moving the forehearth; second,
they assert a genuine issue of fact exists about whether inadequate lighting was the proximate
cause of Crossland's injuries; and third, they contend the trial court erred in allowing into
evidence an affidavit of an Anchor Glass employee, Rufus F. Carroll.
II. The Respondeat Superior Cause of Action
          In their first point of error the Crosslands argue the trial court erred in concluding that no
fact issue exists regarding whether Anchor Glass exercised sufficient control over HAG Steel's
employees to render it liable under respondeat superior for their torts.
          As a general rule, the owner or occupier of certain premises does not have a duty to see
that an independent contractor performs his work in a safe manner. Redinger v. Living, Inc., 689
S.W.2d 415, 418 (Tex. 1985). However, when the owner or occupier exercises some control over
the independent contractor's work, he may be liable unless he exercises reasonable care in
supervising the independent contractor's work. Id. This exception to the general rule has been
stated in section 414 of the Second Restatement of Torts, which has been adopted by our supreme
court:
One who entrusts work to an independent contractor, but who retains control of any
part of the work, is subject to liability for physical harm to others for whose safety
the employer owes a duty to exercise reasonable care, which is caused by his
failure to exercise his control with reasonable care.

Id. (quoting Restatement (Second) Torts § 414 (1965)).
          The control contemplated by section 414, however, is more than a general right to order
the work to start or to stop, to inspect progress, or to receive reports. Id. The control must be
over the manner, method, and means by which the independent contractor performs his designated
tasks. See id. The word "control" in section 414 means control over the physical conduct of the
worker in performing the work and is shown by such matters as control over when and where to
begin and stop work, the regularity of hours and the amount of time spent on particular aspects
of the work, the physical method and manner of accomplishing the end result or results, the
selection of the type of tools and appliances used to perform the work, and the ownership of the
tools and appliances used. See Thompson v. Travelers Indem. Co. of Rhode Island, 789 S.W.2d
277, 278-79 (Tex. 1990); Restatement (Second) Torts § 414 cmt. c.
          The control necessary to render the putative principal liable under section 414 can be
exercised in two different ways; first, if there is evidence that the putative principal explicitly
retained control in the contract with the contractor, or second, if the putative principal actually
exercised control over the work of the contractor. Welch v. McDougal, 876 S.W.2d 218, 222
Tex. App.—Amarillo 1994, writ denied). With these principles in mind, we will consider the
summary judgment evidence.



          We will first address the summary judgment evidence provided by Rufus Carroll. In
deposition testimony that was included in the summary judgment evidence, Carroll, a distribution
manager for Anchor Glass, stated that no one employed by Anchor Glass either directed or had
the authority to order HAG Steel employees to do anything. To the contrary, Carroll testified that
Richard Hood, a co-owner of HAG Steel, was the only person on the premises on December 18
who could have ordered the HAG Steel employees to perform any activities. He also testified that
at the time of the incident, Anchor Glass had three employees on the premises while HAG Steel
had between twelve and fifteen and that none of the Anchor Glass employees had the express
authority to assist either HAG Steel or one of HAG Steel's subcontractors in loading or unloading
its trucks on December 18.
          Carroll testified that the HAG Steel employees knew what tasks they needed to perform
not due to any on-the-job instructions issued by Anchor Glass but because HAG Steel had
performed similar duties for Anchor Glass as well as other companies on several occasions in the
past. Moreover, said Carroll, the items to be removed from the premises were listed in their
contract.
          Carroll stated neither he nor anyone else employed by Anchor Glass examined HAG Steel's
employees' work to determine whether it was satisfactory, nor did anyone check on their progress
or supervise their work. He also stated that all the equipment used to move the forehearth forward
on Crossland's trailer, including the chains and come-alongs, belonged to HAG Steel.
          Deposition testimony was provided by Vaughn, the security guard, that no one from
Anchor Glass was present when the load on Crossland's truck was moved. He stated that while
he and Crossland were watching, HAG Steel employees were attempting to fasten a binder that
was connecting two different chains: one chain was connected to the forehearth and the other was
connected to Crossland's truck. The employees put a pipe or a bar around the handle of the binder
to allow them greater leverage in trying to fasten it. According to Vaughn, he and Crossland were
standing approximately 12 to 15 feet from these men at the time. Something then broke, whether
the binder, come-along, or a chain, Vaughn was uncertain, and then an unknown object flew
through the air, striking Crossland in the head.
          Crossland testified in his deposition that after he had his truck weighed he called the
Anchor Glass plant to inform them of the problem. Someone at the plant told Crossland that the
winch truck was no longer available but four or five guys were available at the plant to shift the
forehearth forward on the truck. He further testified that he and Vaughn watched as several men
used the chains, come-alongs, and binders to move the forehearth until the accident occurred. 
Crossland could not, however, remember the details of the accident.
          In their response to Anchor Glass' summary judgment motion, the Crosslands asserted that
the contract reserved to Anchor Glass control over many elements of the operation. The contract
granted Anchor Glass the authority to specify which machinery was to be moved and to determine
the time by which the work needed to be completed. It stipulated that HAG Steel bore the
responsibility of providing its own equipment to perform the job; it established the rate of pay
Anchor Glass would provide to each of HAG Steel's employees; it set a maximum amount of
money that Anchor Glass would be willing to pay HAG Steel for the completion of the job; and
it required HAG Steel to use its own tools in performing the job.
          We note further that the contract provided that HAG Steel would ship the forehearths the
cheapest way possible unless otherwise specified by Anchor Glass, that HAG Steel warranted its
services would conform to Anchor Glass' specifications, that HAG Steel warranted its work would
not cause damage to Anchor Glass' invitees, that HAG Steel would comply with all applicable
regulations of the Occupational Safety and Health Administration, and that all services rendered
by HAG Steel were subject to the approval of Anchor Glass.
          Other relevant summary judgment evidence was that HAG Steel employees operated the
winch truck used to load the forehearth onto Crossland's truck the first time and that Anchor Glass
owned the premises at the time of the accident.
a. Control under the Contract
          The summary judgment evidence is clear that under the contract Anchor Glass possessed
no right to control any of the actions of HAG Steel's employees in performing their contractual
duties. HAG Steel was made aware by the contract of the duties they were required to perform;
however, nothing in the contract indicated that anyone from Anchor Glass possessed the authority
to direct anyone from HAG Steel in the details of how to perform his duties. The provisions in
the contract which the Crosslands argue bestowed upon Anchor Glass control over the actions of
HAG Steel have nothing to do with directing the manner, method, and means by which HAG Steel
was to complete its duties. These provisions established only that HAG Steel was required to
perform its duties in a safe manner and that Anchor Glass retained the right to inspect the quality
of its work to determine if it was satisfactory. Drennan v. Community Health Inv. Corp., 905
S.W.2d 811, 819 (Tex. App.—Amarillo 1995, writ filed) (where an employer is interested only
in the results, and the contracting party independently determines the details of the method by
which the desired results are attained, an independent contractor relationship exists and the rule
of respondeat superior does not apply); Davis v. R. Sanders & Assoc. Custom Builders, Inc., 891
S.W.2d 779, 782 (Tex. App.—Texarkana 1995, no writ) (in order to be liable the putative
principal must do more than dictate the results of the work or have a general right to order the
work stopped or resumed, to inspect its progress that need not necessarily be followed, or to
prescribe alterations and deviations). Provisions such as a deadline by which work needs to be
completed and that the work must conform to OSHA regulations have nothing to do with control
over the details of the operation. Id. The control that section 414 speaks to means control over
the details, not the stipulation of standards by which the quality of the contractor's work will be
judged.
b. Control in Practice
          The summary judgment evidence is equally clear that Anchor Glass, in practice, did not
exercise any control over the actions of HAG Steel's employees. The closest evidence of any
involvement of Anchor Glass in the actions of HAG Steel was that an Anchor Glass employee
informed Crossland that several employees were on hand to shift the forehearth closer to the front
of his truck. Construing the facts in the light most favorable to the Crosslands, we presume the
person to whom Crossland spoke was an Anchor employee; however, the summary judgment
evidence establishes conclusively that only HAG Steel employees were involved in the actual
shifting of the forehearth. All this Anchor Glass employee did was refer Crossland to the HAG
Steel employees. This is not the kind of control section 414 contemplates. See Hoechst Celanese
Corp. v. Compton, 899 S.W.2d 215, 220 (Tex. App.—Houston [14th Dist.] 1994, no writ)
(instructions by putative principal of the location and time the contractor is to perform his duties
is not a sufficient exercise of control to render the putative principal vicariously liable). Having
concluded that Anchor Glass did not exercise sufficient control over the actions of the HAG Steel
employees to render it vicariously liable under section 414 of the Second Restatement of Torts,
we overrule the Crosslands' first point of error.
III. The Premises Liability Cause of Action
          In their second point the Crosslands argue that the trial court erred in granting Anchor
Glass' motion for summary judgment on the premises liability, or inadequate lighting, cause of
action. We disagree.
          An owner or occupier of land has a duty to use reasonable care to keep the premises under
his control in a safe condition. Redinger, 689 S.W.2d at 417. The Crosslands contend that
Anchor Glass, by failing to provide adequate lighting at the factory, neglected its duty to
Crossland to keep the premises safe and, therefore, Anchor Glass must be liable for any injuries
occurring as a result of the inadequate lighting under a theory of premises liability.
          In its motion for summary judgment, Anchor Glass attacked the proximate cause element
of the Crosslands' complaint, arguing that the reason for Crossland's injury was not inadequate
lighting at the factory but the negligence of HAG Steel employees in shifting the forehearth with
chains, come-alongs, and binders. Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992)
(proximate cause is an element of a premises liability cause of action). The Crosslands argue on
appeal that Anchor Glass failed to prove its contention as a matter of law and that a fact issue
exists on the proximate cause element.
          Proximate cause has two elements: cause in fact and foreseeability. Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). Cause in fact means that the act or omission of the
defendant was a substantial factor in bringing about the injury, and without it harm would not have
occurred. Id. Foreseeability means that the defendant, as a person of ordinary intelligence,
should have anticipated the dangers that his negligent act created for others. Id. If a defendant
by his summary judgment proof conclusively disproves either of the two elements, he will have
established as a matter of law that his alleged negligence could not have been the proximate cause
of the plaintiff's injuries. See id.; Farley v. M M Cattle Co., 529 S.W.2d 751, 755 (Tex. 1975). 
We will address only the cause in fact element.
          The summary judgment evidence establishes that the lighting, or lack thereof, had nothing
to do with the accident that resulted in Crossland's injuries. It was the HAG Steel employees' use
of chains, come-alongs, and binders in attempting to move the forehearth forward on Crossland's
truck that ultimately led to the equipment breaking with one of the pieces flying through the air
at Crossland. Crossland was present in a dangerous situation when the HAG Steel employees
attempted to move the forehearth, but the danger arose not from the condition of the Anchor Glass
premises but from the actions of the HAG Steel employees. The accident would have occurred
regardless of the amount or quality of the light illuminating the work area where the accident
occurred. In other words, it cannot be said that but for the allegedly poor lighting present at the
scene and at the time of the accident John Crossland would not have been injured. See
Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156, 165 (Tex. App.—Waco 1995, no writ). 
Therefore, inadequate lighting cannot be considered the proximate cause of Crossland's injury as
a matter of law. See Abalos v. Oil Dev. Co. of Texas, 544 S.W.2d 627, 631 (Tex. 1976); Shell
Chemical Co. v. Lamb, 493 S.W.2d 742, 746-47 (Tex. 1973); Staublein v. Dow Chemical Co.,
885 S.W.2d 502, 505-06 (Tex. App.—El Paso 1994, no writ). The Crosslands' second point is
overruled.
IV. The Admissibility of the Carroll Affidavit
          In their third point of error, the Crosslands argue the trial court erred in considering as
summary judgment evidence Carroll's affidavit for two reasons: one, it contained only legal
conclusions, and, two, it was the uncontroverted testimony of an interested witness. In their
response to Anchor Glass' motion for summary judgment, the Crosslands included objections to
Carroll's affidavit on these grounds; however, the Crosslands failed to obtain a ruling on their
objections. Therefore, their complaints have not been preserved for our review. Roberts v.
Friendswood Dev. Co., 886 S.W.2d 363, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied);
Thompson v. Chrysler First Business Credit Corp., 840 S.W.2d 25, 29 (Tex. App.—Dallas 1992,
no writ); Hopkins v. Highlands Ins. Co., 838 S.W.2d 819, 822 (Tex. App.—El Paso 1992, no
writ) (the general rule under Tex. R. App. P. 52(a) that a ruling on an objection must be obtained
to preserve a complaint for appellate review is also applicable in the summary judgment context). 
The Crosslands' third point is overruled. 
          The judgment is affirmed.

                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed February 21, 1996
Do not publish