Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
ANTHONY C. AGUILAR and                           ) 
SUSAN B. AGUILAR,                                       )                  No. 08-03-00496-CV
)
                                    Appellants,                       )                             Appeal from
)
v.                                                                          )                 County Court at Law No. 7
)
ENRIQUE TRUJILLO, ALSO KNOWN AS     )                  of El Paso County, Texas
HENRY TRUJILLO, INDIVIDUALLY             )
AND AS AGENT FOR                             )                  (TC# 97-160)
CONCEPCION CASTANEDA TRUJILLO,      )
DECEASED, and THE ELIZARIO P.                ) 
TRUJILLO RESIDUARY TRUST,                    ) 
)
                                    Appellees.                        ) 

O P I N I O N

            Anthony C. Aguilar and Susan B. Aguilar (the Aguilars) appeal from a summary judgment
granted in favor of Enrique Trujillo also known as Henry Trujillo, Individually and as Agent for
Concepcion Castaneda Trujillo, Deceased, and the Elizario P. Trujillo Residuary Trust (Trujillo or
the Trujillo defendants).


 The trial court awarded attorney’s fees to Trujillo in the amount of
$40,000. The Aguilars raise twenty-two issues on appeal pertaining to Trujillo.


 Finding no error,
we affirm.
FACTUAL SUMMARY
            The Aguilars own property in El Paso County adjacent to the Trujillo Farm, which is owned
by the Estate of Concepcion Castaneda Trujillo and the Elizario P. Trujillo Residuary Trust. Morales
and Enrique Trujillo (Trujillo) are the adult children of Concepcion and Elizario Trujillo, both
deceased. Morales is the executrix of her mother’s estate and trustee of her father’s residuary trust. 
In November 1996, Trujillo placed several truckloads of manure on the family farms, including the
Trujillo Farm. At that time, Trujillo conducted farming operations on the Trujillo Farm pursuant to
a crop sharing agreement with his mother, who was still living. Trujillo made the decisions
regarding planting, fertilization, and irrigation. 
            In January 1997, the Aguilars filed suit against Enrique Trujillo, Concepcion Trujillo, and
the residuary trust,


 alleging breach of an oral agreement to grant an easement for the purpose of
extending a water line to the Aguilar property. Their suit also included a claim for damages caused
by the discharge of agricultural waste on the Trujillo Farm in November 1996. The Aguilars alleged
that contaminants found in the agricultural waste will leach into the groundwater and contaminate
their well water when the property is irrigated. The Aguilars subsequently amended their petition
to drop the breach of contract claim, and added claims for nuisance and trespass based on their
assertion that their well had been contaminated by the manure. Their suit also included a claim for
tortious interference with a contractual relationship. The Aguilars later amended their petition to add
as defendants Morales and the dairy


 which had supplied the manure to Trujillo. 
            On May 10, 2001, Trujillo served a request for production and inspection on the Aguilars in
order to test their well water. The Aguilars resisted the request and demanded to know the identity
of the person who would test the well. Trujillo’s attorney, Tom Wicker, initially refused to reveal
the identity of his consulting expert out of concern that Mr. Aguilar would attempt to contact the
witness. But the trial court required that Trujillo identify his consulting expert. On July 27, 2001,
Wicker notified Mr. Aguilar that James Maly of Frontera Environmental would require access to the
Aguilar property on the following day for the purpose of taking water samples from the well. Maly
drew the samples and filled out a chain of custody form. Wicker’s legal assistant then delivered the
samples to Trace Analysis for testing. On August 6, 2001, Mr. Aguilar contacted Maly without
Wicker’s consent and hired Maly as an expert witness for the Aguilars. The Aguilars paid Frontera
Environmental a $5,000.00 retainer. Maly accepted employment with the Aguilars because, in his
opinion, he had not been retained by Trujillo as a consulting expert. Acting on behalf of the
Aguilars, Maly drew additional water samples from the well and submitted them for testing. On
September 28, 2001, the Aguilars designated Maly and Hector Villa, the President and CEO of
Frontera Environmental, as expert witnesses. Villa and Maly produced a joint expert report dated
October 15, 2001. Trujillo filed a motion to strike the Aguilars’ experts on the ground that Mr.
Aguilar had improperly contacted a consulting expert in violation of Rule 4.02(b) of the Rules of
Professional Conduct. Following a hearing, the trial court granted the motion to strike Maly, Villa,
and all employees of Frontera Environmental.
            The Aguilars subsequently retained a geology expert, Dirk Schulze-Makuch Ph.D. (Dr.
Schulze-Makuch), and provided his report to Trujillo and Morales. Dr. Schulze-Makuch’s report
reflected that in forming his opinions, he relied on the work product, opinions, and expert report
provided by Frontera Environmental and Maly. Consequently, Morales and Trujillo filed a motion
to strike Dr. Schulze-Makuch because he had relied on the work product and opinions of witnesses
who had been excluded by the trial court. The trial court granted the motion and excluded
Dr. Schulze-Makuch. 
            Both Morales and Trujillo filed motions for traditional and no-evidence summary judgment.
On November 1, 2002, Trujillo and Morales filed a joint motion for summary judgment alleging that
the Aguilars had no evidence that the manure placed on the Trujillo Farm caused contamination of
their water well, and no evidence of recoverable damages. Additionally, Trujillo and Morales
asserted three affirmative defenses in response to the tortious interference claim. The trial court
granted summary judgment in favor of Morales on December 27, 2002 without specifying the precise
grounds for the ruling. The court also granted Morales’ motion to sever and assigned a new cause
number, 2003-1501, to the portion of the case pertaining to her. The claims against Trujillo
remained pending in the original cause number, 97-160. On March 12, 2003, the court granted a
partial summary judgment in favor of Trujillo with respect to the Aguilars’ “claims for alleged
violations of the Texas Water Code, tortuous [sic] interference, and res ipsa loquitor.” On June 30,
2003, Trujillo filed a third motion for no- evidence summary judgment. The trial court granted final
summary judgment in favor of Trujillo on September 10, 2003. The Aguilars timely filed notices
of appeal in both cause number 97-160 and cause number 2003-1501. 
STRIKING EXPERT WITNESSES
            In ten related issues, the Aguilars challenge the exclusion of its expert witnesses. Issues One
through Eight pertain to the striking of Maly, Villa, and any employee of Frontera Environmental,
and Issues Nine and Ten address the exclusion of Dr. Schulze-Makuch. The Aguilars argue in
several issues that Maly was not a consulting expert, and therefore, Mr. Aguilar was not prohibited
from contacting him. Further, they argue that the sanction should not be imposed against
Mrs. Aguilar since she is not an attorney and did not personally contact Maly. Additionally, the
Aguilars contend that a violation of Disciplinary Rule 4.02(b) cannot serve as the basis for the
exclusion of these witnesses. 
Standard of Review
            We must first determine whether the Aguilars are correct that we review the court’s orders
de novo. Although Trujillo did not specifically cite Rule 215 in his motion to strike and for
sanctions, his motion asserted that the Aguilars violated the discovery rules by contacting Maly. 
Additionally, Trujillo alleged that Mr. Aguilar’s unauthorized contact with Maly violated
Disciplinary Rule 4.02(b). These allegations invoked the trial court’s discretion to impose sanctions
pursuant to Rule 215. We reject the argument that improper contact with a consulting expert cannot
result in sanctions.
            If the trial court finds that a party is abusing the discovery process in seeking, making, or
resisting discovery, the court may, after notice and hearing, impose any appropriate sanction
authorized by paragraphs (1), (2), (3), (4), (5) and (8) of Rule 215.2(b). See Tex.R.Civ.P. 215.3. 
The enumerated sanctions include prohibiting a party from introducing designated matters in
evidence. See Tex.R.Civ.P. 215.2(b)(4). We review imposition of sanctions under Rule 215 for an
abuse of discretion. Koslow’s v. Mackie, 796 S.W.2d 700, 704 (Tex.1990); Bodnow Corp. v. City
of Hondo, 721 S.W.2d 839, 840 (Tex. 1986). If the sanctions imposed are not just, a trial court
abuses its discretion. TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex.
1991).
            In TransAmerican, the Supreme Court set out a two-part test for determining whether a
particular sanction is just. Spohn Hospital v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003);
TransAmerican, 811 S.W.2d at 917. First, there must be a direct nexus between the offensive
conduct, the offender, and the sanction imposed. Spohn, 104 S.W.3d at 882; TransAmerican, 811
S.W.2d at 917. A just sanction must be directed against the abuse and toward remedying the
prejudice caused to the innocent party, and the sanction should be visited upon the offender. Spohn,
104 S.W.3d at 882; TransAmerican, 811 S.W.2d at 917. The trial court must attempt to determine
whether the offensive conduct is attributable to counsel only, to the party only, or to both. Spohn,
104 S.W.3d at 882; TransAmerican, 811 S.W.2d at 917.
            Second, just sanctions must not be excessive. Spohn, 104 S.W.3d at 882; TransAmerican,
811 S.W.2d at 917. In other words, a sanction imposed for discovery abuse should be no more
severe than necessary to satisfy its legitimate purposes, which include securing compliance with
discovery rules, deterring other litigants from similar misconduct, and punishing violators. Spohn,
104 S.W.3d at 882; TransAmerican, 811 S.W.2d at 917.
Relationship Between Offensive Conduct
and the Sanction Imposed

            All of the Aguilars’ arguments relate to the first part of the TransAmerican test. They argue
that (1) Maly was not a consulting expert; (2) violation of Disciplinary Rule 4.02(b) cannot result
in the sanction imposed by the trial court; and (3) a sanction should not be imposed against
Mrs. Aguilar because she did not contact Maly. We will address these arguments in the order
presented.
            A consulting expert is defined as an expert who has been consulted, retained, or specially
employed by a party in anticipation of litigation or in preparation for trial, but who is not a testifying
expert. Tex.R.Civ.P. 192.7(d). The Aguilars contend that Maly is not a consulting expert because
he did not enter into a written contract with Trujillo’s attorneys and he was not paid an appropriate
retainer for a consulting expert. They do not address whether he was consulted or specially
employed in anticipation of litigation or in preparation for trial.
            At Wicker’s instruction, his legal assistant, Louise Elorreaga, contacted Maly and spoke with
him about the pending litigation brought by the Aguilars against Trujillo. Maly agreed to take water
samples on behalf of Trujillo. Maly admitted that Elorreaga informed him that there was a dispute
between the parties regarding alleged contamination of the Aguilars’ well and he was hired for his
expertise and knowledge of water wells. He also conceded that the water samples taken by him are
an important part of the lawsuit. Wicker plainly considered Maly a consulting expert, and based
upon Rule 192.3(e), Wicker resisted the Aguilars’ requests that he reveal the identity of the person
who would be taking the water samples and submitting them for testing.


 Wicker informed the trial
court that he did not want to reveal the identity of his consulting expert who would be conducting
the water sampling because he feared Mr. Aguilar would contact him without prior consent, but the
trial court required him to do so. Maly, accompanied by Elorreaga, subsequently took the water
samples from the Aguilars’ well and Frontera Environmental billed Wicker’s law firm for the
services performed by Maly.
            The lack of a written contract or payment of a consulting expert retainer is not dispositive
of the issue before us. The evidence, while conflicting, supports a conclusion by the trial court that
Wicker, acting through his legal assistant, consulted with Maly on behalf of Trujillo and specially
employed him to take the water samples from the Aguilars’ well in preparation for trial.
            The Aguilars next argue that a violation of Rule 4.02(b) of the Texas Disciplinary Rules of
Professional Conduct cannot serve as the basis for the exclusion of their expert witnesses. Rule
4.02(b) provides:
In representing a client a lawyer shall not communicate or cause another to
communicate about the subject of representation with a person or organization a
lawyer knows to be employed or retained for the purpose of conferring with or
advising another lawyer about the subject of the representation, unless the lawyer has
the consent of the other lawyer or is authorized by law to do so.

Tex.Disciplinary R.Prof.Conduct 4.02(b)(1989), reprinted in Tex.Gov’t Code Ann., Tit. 2,
Subtit. G, App. A (Vernon 2005)(State Bar Rules art. X, § 9). Comment 3 specifically notes that
Rule 4.02(b) prohibits an attorney from contacting experts employed or retained by opposing counsel
for a particular matter unless opposing counsel has first consented. Tex.Disciplinary
R.Prof.Conduct 4.02(b), comment 3. The evidence shows that Mr. Aguilar contacted Maly
without Wicker’s consent and with knowledge that Maly was Trujillo’s consulting expert.
            Rule 215.3 authorizes a trial court to impose a sanction if the court finds that a party has
abused the discovery process in seeking, making, or resisting discovery. Therefore, the issue is not
whether the Disciplinary Rules authorize the sanction imposed by the trial court. Rather, the
question is whether Mr. Aguilar’s violation of Rule 4.02(b) constitutes an abuse of the discovery
process within the meaning of Rule 215.3 such that the trial court was authorized to impose the
sanction delineated in paragraph (5) of Rule 215.2(b). The evidence reflects that Mr. Aguilar knew
that Wicker did not want to reveal the identity of his consulting expert because he feared that Mr.
Aguilar would contact Maly without his consent. After learning the consulting expert’s identity, Mr.
Aguilar proceeded to not only contact Maly without Wicker’s consent but he actually hired Maly and
Frontera Environmental to serve as the Aguilars’ designated expert witnesses in the case. This
effectively deprived Trujillo of his consulting experts. We conclude that, under the circumstances
of this case, Mr. Aguilar’s contact with Maly constitutes an abuse of the discovery process.
            Finally, Mrs. Aguilar contends that the court erred by striking the experts with respect to her
because she is not an attorney and she did not personally contact Maly. We understand her to argue
that she should not be punished for Mr. Aguilar’s violation of the discovery rules. It is difficult to
determine Mr. Aguilar’s status with respect to Mrs. Aguilar because he has appeared as both a pro
se plaintiff and as counsel for Mrs. Aguilar during the course of these proceedings. In some
pleadings found in the record, Mr. Aguilar has been shown as counsel of record for Mrs. Aguilar. 
In those instances, Mr. Aguilar is shown as being represented by Gino Estrada-C. But at other times,
Mr. Aguilar has signed the pleadings or appeared pro se, and Mr. Estrada-C is shown as counsel for
Mrs. Aguilar. At the time Mr. Aguilar engaged in the offensive conduct, the majority of the
pleadings showed him as a pro se plaintiff. We note, however, that other than signing various
pleadings, Mr. Estrada-C has not taken an active role in the prosecution of this case. At hearings,
Mr. Aguilar has taken the lead role for the plaintiffs while Mr. Estrada-C has simply adopted Mr.
Aguilar’s position. Under these circumstances, the trial court could reasonably have concluded that
Mr. Aguilar contacted Maly on behalf of both himself and his wife, and therefore, she should not be
permitted to benefit from the discovery abuse.
            Because the Aguilars do not argue on appeal that the trial court failed to consider a lesser
sanction, it is unnecessary for us to review the second part of the TransAmerican standard. Having
determined that the sanction imposed is just, we overrule Issues One through Ten.
SUMMARY JUDGMENT
            In Issues Eleven and Thirteen, the Aguilars contend that the trial court erred by granting
summary judgment in favor of Trujillo. Trujillo filed both traditional and no-evidence motions for
summary judgment. We will address the no-evidence summary judgment as it applies to all of the
Aguilars’ causes of action except tortious interference. The affirmative defenses raised in connection
with the nuisance and tortious interference claims must be addressed in the context of traditional
summary judgment rather than a no evidence motion. 
Standards of Review
            In a traditional summary judgment proceeding, the standard of review on appeal is whether
the successful movant at the trial level carried the burden of showing that there is no genuine issue
of material fact and that judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr’s Supermarkets, Inc., 921 S.W.2d 778, 784
(Tex.App.--El Paso 1996, writ denied). The question on appeal is not whether the summary
judgment proof raises fact issues as to required elements of the movant’s cause or claim, but whether
the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material
fact as to one or more elements of the movant's cause or claim. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving these issues, all evidence
favorable to the non-movant must be taken as true and all reasonable inferences, including any
doubts, must be resolved in the non-movant's favor. Nixon v. Mr. Property Mgmt. Co., Inc., 690
S.W.2d 546, 548-49 (Tex. 1985); Duran, 921 S.W.2d at 784. A trial court properly grants summary
judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative
defense, or conclusively negates at least one element of the plaintiff’s claim. American Tobacco Co.,
Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 
            A no-evidence summary judgment under Tex.R.Civ.P. 166a(i) is essentially a pretrial
directed verdict, and a reviewing court applies the same legal sufficiency standard. Wyatt v.
Longoria, 33 S.W.3d 26, 31 (Tex.App.--El Paso 2000, no pet.). The party moving for summary
judgment on this basis must specifically state the elements as to which there is no evidence.
Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact
issue on the challenged elements. Id. When reviewing a no-evidence summary judgment, the
reviewing court views the evidence in the light most favorable to the non-movant disregarding all
contrary evidence and inferences. Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the respondent counters
with more than a scintilla of probative evidence to raise a genuine issue of material fact. See
Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex.App.--Houston [14th Dist.] 1999, no pet.);
Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Less than a
scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise
or suspicion. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of
evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons
to differ in their conclusions. Havner, 953 S.W.2d at 711. In a case where the trial court’s judgment
does not specify the ground or grounds relied upon for its ruling, the summary judgment must be
affirmed if any of the theories advanced is meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989).
Specificity of Summary Judgment Motion
            The Aguilars first contend that Trujillo’s no-evidence motion for summary judgment is
defective because it is does not sufficiently point out the elements which Trujillo seeks to challenge. 
See Tex.R.Civ.P. 166a(i)(requiring that the summary judgment motion state the elements as to
which there is no evidence). Trujillo’s no-evidence motion alleges: (1) there is no evidence that any
actual material or substance from the Trujillo Farm crossed over onto the Aguilar property or into
the groundwater and caused damages or injuries; (2) there is no evidence of contamination of the
Aguilars’ water caused by Trujillo placing manure on his farm; and (3) there is no evidence of any
recoverable damages caused as the result of anything done by Trujillo. The motion sufficiently
identified the challenged elements.
Res Ipsa Loquitor Doctrine
            After the defendants filed their motions for summary judgment, the Aguilars amended their
petition to add an allegation based on the res ipsa loquitor doctrine. Res ipsa loquitur is a rule of
evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the
accident happened, provided (1) the character of the accident and the circumstances attending it lead
reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the
thing which caused the injury is shown to have been under the management and control of the
alleged wrongdoer. Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex. 1990). The effect of
successfully invoking the res ipsa doctrine is that the plaintiff can survive no-evidence procedural
challenges. See Mobil Chemical Company v. Bell, 517 S.W.2d 245, 251 (Tex. 1975)(no presumption
of defendant’s negligence arises; jury is merely free to infer negligence; plaintiff continues to have
burden of persuading jury by preponderance of evidence that defendant was negligent).
            The res ipsa doctrine is inapplicable to this case. The Aguilars did not present any evidence
that groundwater contamination ordinarily does not occur in the absence of negligence. See Western
Greenhouses v. United States, 878 F.Supp. 917, 930 (N.D. Tex. 1995). Consequently, the pleading
of res ipsa does not defeat the no-evidence summary judgment motion.
The Nuisance and Trespass Claims

            The Aguilars contend that they produced sufficient evidence to withstand the no-evidence
motion as to the nuisance, nuisance per se, and continuing trespass causes of action. Trujillo
responds that the Aguilars failed to produce any evidence that any substance crossed from the
Trujillo Farm to the Aguilars’ property or that the manure placed on the Trujillo Farm contaminated
the groundwater.
            A nuisance is a condition that substantially interferes with the use and enjoyment of land by
causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use
or enjoy it. Holubec v. Brandenberger, 111 S.W.3d 32, 36 (Tex. 2003); Walton v. Phillips
Petroleum Co., 65 S.W.3d 262, 270 (Tex.App.--El Paso 2001, no pet.). A nuisance may arise by
causing (1) physical harm to property, such as by the encroachment of a damaging substance or by
the property’s destruction, (2) physical harm to a person on his property from an assault on his senses
or by other personal injury, and (3) emotional harm to a person from the deprivation of the
enjoyment of his property through fear, apprehension, or loss of peace of mind. Walton, 65 S.W.3d
at 270. For an actionable nuisance, a defendant must generally engage in one of three kinds of
activity: (1) intentional invasion of another’s interests; (2) negligent invasion of another’s interests;
or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades
another’s interests. Z.A.O., Inc. f/k/a Bell Thunderbird Oil Co., Inc. v. Yarbrough Drive Center Joint
Venture, 50 S.W.3d 531, 532 (Tex.App.--El Paso 2001, no pet.); Hicks v. Humble Oil & Refining
Co., 970 S.W.2d 90, 96 (Tex.App.--Houston [14th Dist.] 1998, pet. denied).
            The Aguilars also brought a nuisance per se claim against the Morales defendants, alleging
that they violated a law by discharging agricultural waste on the Trujillo Farm. A nuisance per se
is an act, occupation, or structure that is a nuisance at all times, under any circumstances, and in any
location. Freedman v. Briarcroft Property Owners, Inc., 776 S.W.2d 212, 216 (Tex.App.--Houston
[14th Dist.] 1989, writ denied).
            The Aguilars’ pleadings include a claim for continuing trespass and a request for injunctive
relief. Every unauthorized entry is a trespass even if no damage is done. Trinity Universal Ins. Co.
v. Cowan, 945 S.W.2d 819, 827 (Tex. 1997); General Mills Restaurants, Inc. v. Tex. Wings, Inc.,
12 S.W.3d 827, 833 (Tex.App.--Dallas 2000, no pet.). A trespass can be either by entry of a person
on another’s land or by causing or permitting a thing to cross the boundary of the premises. City of
Arlington v. City of Fort Worth, 873 S.W.2d 765, 769 (Tex.App.--Fort Worth 1994, writ dism’d
w.o.j.). Finally, a trespass may be committed on, beneath, or above the surface of the earth. City of
Fort Worth, 873 S.W.2d at 769. Injunction is a proper remedy to restrain repeated or continuing
trespasses. City of Fort Worth, 873 S.W.2d at 769. 
            The Aguilars filed a lengthy response to the motion for summary judgment and attached
evidence, including the expert reports of Maly and Dr. Schulze-Makuch, and excerpts from Dr.
Schulze-Makuch’s deposition. The trial court sustained objections to much of the Aguilars’
evidence. The admissible portion of the Aguilars’ response did not contain any evidence showing
that a substance placed on the Trujillo Farm encroached on the Aguilar property or that their
groundwater was contaminated as the result of Trujillo placing manure on his farm. Consequently,
the trial court properly granted summary judgment with respect to the nuisance, nuisance per se, and
continuing trespass claims.
Tortious Interference
            The Aguilars also complained that Morales and Trujillo tortiously interfered with their
contractual relationship with Frontera Environmental by successfully prosecuting their motions to
strike Maly, Villa, and Frontera Environmental. The joint motion for summary judgment raised
multiple affirmative defenses but we need only address the justification defense. 
            The elements of tortious interference with a contractual relationship are: (1) the existence
of a contract (2) the willful or intentional act of interference (3) that was a proximate cause of
damages and (4) actual damage or loss occurred. Hopkins v. Highlands Ins. Co., 838 S.W.2d 819,
824 (Tex.App.--El Paso 1992, no pet.). A party is privileged to interfere with a contractual
relationship if (1) it acts in the bona fide exercise of its own rights, or (2) it has an equal or superior
right in the subject matter to that of the party to the contract. Sterner v. Marathon Oil Co., 767
S.W.2d 686, 691 (Tex. 1989). It is undisputed that Morales and Trujillo successfully prosecuted
their motions to strike the expert witnesses based on Mr. Aguilar’s abuse of the discovery process. 
In so doing, Morales and Trujillo acted in a bona fide exercise of their own rights. The Aguilars did
not raise a fact issue with respect to this affirmative defense and the trial court did not err in granting
summary judgment on this ground. Issues Eleven and Thirteen are overruled.
SECTION 251.004(A)
            In Issues Fourteen through Seventeen, the Aguilars maintain that the trial court erred by
granting summary judgment on the nuisance action based on a defense found in Section 251.004(a)
of the Texas Agriculture Code. In Issue Nineteen, the Aguilars contend that the trial court erred by
awarding attorney’s fees pursuant to Section 251.004(b). While we have already determined that
the trial court could have properly granted the no-evidence summary judgment with respect to the
nuisance causes of action, it is necessary to address these issues because the trial court awarded
attorney’s fees pursuant to Section 251.004(b).
            Trujillo moved for summary judgment on the ground that the Aguilars’ nuisance action is
barred by Section 251.004(a). This section provides that no nuisance action may be brought against
an agricultural operation that has lawfully been in operation for one year or more prior to the date
on which the action is brought, if the conditions or circumstances complained of as constituting the
basis of the nuisance action have existed substantially unchanged since the established date of
operation. Tex.Agric.Code Ann. § 251.004(a)(Vernon 2004). 
            Section 251.004(a) is part of the Right to Farm Act. The Legislature passed this Act in 1981
in order “to conserve, protect, and encourage the development and improvement of [Texas]
agricultural land for the production of food and other agricultural products” by “limiting the
circumstances under which agricultural operations may be regulated or considered to be a nuisance.”
Tex.Agric.Code Ann. § 251.001. To further this policy, the Legislature in Section 251.004(a) of
the Act shortened the period for bringing a nuisance action against an agricultural operation to one
year. Holubec v. Brandenberger, 111 S.W.3d 32, 35 (Tex. 2003). The defense in Section
251.004(a) is intended to bar a nuisance action against a lawful agricultural operation one year after
the commencement of the conditions or circumstances providing the basis for that action. Id. at 34. 
Under the Act it does not matter when the complaining party discovers the conditions or
circumstances constituting the basis for the nuisance action. Id. The Act’s definition of “agricultural
operation” includes “cultivating the soil,” “producing crops for human food, animal feed, planting
seed, or fiber,” and “planting cover crops.” Tex.Agric.Code Ann. § 251.002. The bar does not
apply, however, if an agricultural operation is conducted in violation of a federal, state or local
statute or governmental requirement that applies to the agricultural operation. Tex.Agric.Code
Ann. § 251.004(c). If a person brings a nuisance action for damages or injunctive relief against an
agricultural operation that has existed for one year or more prior to the date the action is instituted,
the person is liable for all costs and expenses incurred in defense of the action, including but not
limited to attorney’s fees, court costs, travel, and other related incidental expenses incurred in the
defense. Tex.Agric.Code Ann. § 251.004(b).
            The Trujillo Farm is a twenty-five acre parcel of agricultural land located in El Paso County,
Texas. In the area where the farm is located, application of manure as a fertilizer has historically
been a common practice in the agricultural industry. Trujillo, who is familiar with the proper
application of manure for agricultural purposes, applied less than 95 tons of manure per acre in a 
manner designed to enrich the soil and benefit the crops subsequently grown on the farm. Following
application of this manure and irrigation of the farm in April or May of 1997, the Trujillo Farm
produced healthy crops, including Sudan grass. Trujillo has never been informed by the Texas
Natural Resources Conservation Commission that fertilization of the Trujillo Farm with cow manure
is illegal or required a permit.
            In January of 1997, the Aguilars filed suit alleging breach of an oral agreement to grant an
easement for the purpose of extending a water line to the Aguilar property. Their suit also alleged
that contaminants found in the manure applied to the farm in November of 1996 would eventually
leach into the groundwater when irrigated. The Aguilars amended their petition on July 29, 1997
and added allegations that Trujillo had violated provisions of the Texas Water Code by dumping
“agricultural waste” on the Trujillo Farm, and was subject to various civil and criminal penalties. 
The pleadings sought damages in amount necessary to remove the soil and contaminants from the
Trujillo Farm, and approximately $48,000 for the construction of an alternative source of potable
water. Once again, the petition alleged that the contaminants in the manure would eventually leach
into the groundwater when irrigated. The Aguilars did not amend their petition to include a nuisance
claim until April 27, 2001, more than four years later. That nuisance claim is based on the
November 1996 application of manure and irrigation in April or May of 1997. The Aguilars alleged
that following the first irrigation of the Trujillo Farm, the water from their well turned black. 
            The Aguilars first argue that Section 251.004(a) is a statute of limitations, not a statute of
repose, such that their nuisance claims relate back to the original filing date of their suit. The
distinction between a statute of limitations and a statute of repose is significant. A statute of
limitations is a procedural device operating as a defense to limit the remedy available from an
existing cause of action; a statute of repose creates a substantive right to be free from liability after
a legislatively determined period. Cadle Co. v. Wilson, 136 S.W.3d 345, 350 (Tex.App.--Austin
2004, no pet.); Duran v. Henderson, 71 S.W.3d 833, 837 (Tex.App.--Texarkana 2002, pet. denied);
see Holubec, 111 S.W.3d at 37. While statutes of limitations operate to bar enforcement of a right,
a statute of repose takes away the right altogether. Cadle Co., 136 S.W.3d at 350; Duran, 71 S.W.3d
at 838. The period set under a statute of repose is independent of the claim’s accrual or discovery
and may cut off rights of action even before they accrue. See Holubec, 111 S.W.3d at 37. A claim
extinguished by operation of a statute of repose does not “relate back” to the filing of an earlier
pleading as it would in the case of a statute of limitation. See Resolution Trust Corporation v. Olson,
768 F.Supp. 283, 285 (D.Ariz. 1991).
            In Holubec, the Supreme Court considered whether Section 251.004(a) is a statute of repose,
noting that “if the one-year period prescribed in section 251.004(a) is a statute of repose, it is unique
both because it is conditional and because it is so short.” Id. The court concluded that Section
251.004(a) was intended to bar a nuisance action against a lawful agricultural operation one year
after the commencement of the conditions or circumstances providing the basis for that action, and
therefore, it does not matter when the complaining party discovers the conditions or circumstances
constituting the basis for the nuisance action. Id. at 38. Although the Supreme Court did not
expressly so hold, the only conclusion is that Section 251.004(a) is a statute of repose. See Barrera
v. Hondo Creek Cattle Co., 132 S.W.3d 544, 546 (Tex.App.--Corpus Christi 2004, no pet.). 
            The Aguilars next argue that Trujillo failed to offer summary judgment evidence showing
the Trujillo Farm’s “established date of operation.” Section 251.003 provides, in part, that:
For purposes of this chapter, the established date of operation is the date on which
an agricultural operation commenced operation. 
 
Tex.Agric.Code Ann. § 251.003. We do not read Section 251.003 or 251.004(a) as requiring
Trujillo to prove the exact date on which the Trujillo Farm first began agricultural operations. There
are certainly suggestions that the farms had been in operation in previous years but it is unclear for
how long. For purposes of this case, however, Trujillo established that the Trujillo Farm
commenced agricultural operations in November 1996 when he “cultivated the soil” by spreading
fertilizer and plowing it into the soil.
            The Aguilars also maintain that their amended petition filed in July of 1997 sufficiently
alleged facts to state nuisance and nuisance per se causes of action. As we have already noted, a
nuisance is a condition that substantially interferes with the use and enjoyment of land by causing
unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use or enjoy
it. Holubec, 111 S.W.3d at 36. The Aguilars’ allegations found in their first amended petition that
their groundwater would eventually be contaminated as the manure percolated through the soil does
not state a current condition that substantially interferes with the use and enjoyment of their land. 
Thus, it did not state a nuisance or nuisance per se cause of action.
            The Aguilars also contend that Trujillo failed to establish that the conditions or circumstances
constituting the basis of the suit had existed unchanged for more than one year. Trujillo’s summary
judgment evidence revealed that the Trujillo Farm had been in operation since at least 1996 and the
Aguilars did not amend their petition to add nuisance claims until April 27, 2001. The sole basis of
the Aguilars’ nuisance claim is the fertilization of the farm with cow manure in November of 1996
and irrigation of the soil in 1997. The Aguilars’ petition alleged that the placement of the manure
in 1996 and the first irrigation resulted in the contamination of their groundwater. The events
forming the basis of the Aguilars’ suit, fertilization and irrigation of the farm, have already occurred. 
We conclude that Trujillo conclusively established that the conditions or circumstances constituting
the basis of the suit had existed unchanged for more than one year. 
            Finally, the Aguilars argue that Section 251.004(a) does not apply because the Trujillo Farm
violated various sections of the Texas Health and Safety Code. Other than quoting Section
251.004(c), the Aguilars did not raise these arguments in their summary judgment response. Issues
not expressly presented to the trial court by written motion, answer or other response shall not be
considered on appeal as grounds for reversal. Tex.R.Civ.P. 166a(c); McConnell v. Southside Indep.
Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1983).
            We conclude that Trujillo conclusively established that the Aguilars brought their nuisance
action against an agricultural operation that had been in lawful operation for more than one year prior
to April of 2001 and the conditions or circumstances complained of as constituting the basis of the
nuisance action had existed substantially unchanged since the application of the manure in
November of 1996. The trial court did not err by granting summary judgment on this ground or by
awarding attorney’s fees pursuant to Section 251.004(b). Issues Fourteen through Seventeen and
Nineteen are overruled.
FINALITY OF THE JUDGMENT
            In Issue Eighteen, the Aguilars maintain that the summary judgment does not comply with
Rule 306 of the Rules of Civil Procedure because it refers to “defendant” rather than “defendants,”
and therefore, the judgment is not final because it does not dispose of all of the parties. The Aguilars
previously presented this argument to the court by written motion and it was denied. Issue Eighteen
is overruled.
PRIOR SUMMARY JUDGMENT EVIDENCE
            In Issues Twenty-One through Twenty-Four, the Aguilars complain that the trial court failed
to consider evidence associated with a prior summary judgment motion. On June 27, 2001, the
Aguilars filed a motion for partial summary judgment. The motion referenced responses to requests
for admissions and numerous depositions, but it did not include the documents or excerpts from the
depositions. The Aguilars’ response to the motions for summary judgment filed by Morales and
Trujillo incorporated by reference their prior summary judgment motion. Trujillo filed written
objections to the Aguilars’ summary judgment response and evidence. Trujillo objected, in part, that
the Aguilars had failed to comply with the trial court’s order pertaining to summary judgment
motions and responses because they had served Trujillo’s attorney with entire depositions, not
excerpts, and had failed to specify the page numbers where the evidence relied on by the Aguilars
could be found. The trial court’s order required that a summary judgment response “quote verbatim
the facts relied upon, identify the source of those facts, and specify where in the Summary Judgment
evidence those facts may be found.” The trial judge, noting that he did not attempt to carry the
Aguilars’ response because of its weight, sustained Trujillo’s objections. 
            The Aguilars did not cite, quote or otherwise point out to the trial court the testimony they
relied on to create a fact issue. A general reference to a voluminous record that does not direct the
trial court and parties to the evidence on which the movant relies is insufficient. See Rogers v.
Ricane Enters., Inc., 772 S.W.2d 76, 81 (Tex. 1989). In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift
through voluminous deposition transcriptions in search of evidence to support the non-movant’s
argument that a fact issue exists. See Shelton v. Sargent, 144 S.W.3d 113, 120 (Tex.App.--Fort
Worth 2004, pet. denied)(even if depositions and other evidence are contained in the trial court’s file,
a general reference to a voluminous record that does not direct the trial court and parties to the
evidence on which the movant relies is insufficient to support a claim of a dispute as to a material
fact necessary to survive summary judgment; the trial court is not required to search a voluminous
file for summary judgment evidence raising a genuine issue of material fact without more specific
guidance from the non-movant); White Oak Bend Municipal Utility District v. Robertson, No.
14-00-00155-CV, 2002 WL 245957 (Tex.App.--Houston [14th Dist.] Feb 21, 2002, pet. denied)(on
appeal of summary judgment on limitations grounds, appellate court would not consider entire
transcripts from depositions of six witnesses, which exceeded 1,300 pages in length; appellant did
not cite any portions of summary judgment evidence that it claimed raised genuine issue of material
fact as to discovery rule, appellant did not cite most pages of deposition transcripts for any
proposition, and neither trial court nor appellate court were required to sift through voluminous
deposition transcripts in search of evidence to support contentions); Guthrie v. Suiter, 934 S.W.2d
820, 826 (Tex.App.--Houston [1st Dist.] 1996, no writ)(holding that trial court did not abuse its
discretion by refusing to consider a five hundred page deposition attached to the nonmovant’s
response when the nonmovant did not point out to the trial court where in the deposition the issues
set forth in the response were raised). The trial court did not abuse its discretion by entering the
order nor by sustaining Trujillo’s objections. Issues Twenty-One through Twenty-Four are
overruled. Having overruled each of the issues applicable to Trujillo, we affirm the summary
judgment.
 
April 21, 2005                                                             
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.