COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| COLLIN McCLEARY, | § | No. 08-24-00116-CV |
| Appellant, | § | Appeal from the |
| v. | § | 109th District Court |
| CTL CORP., | § | of Winkler County, Texas |
| Appellee. | § | (TC# DC20-17766) |

## MEMORANDUM OPINION

This case involves the explosion of a pipeline when it became over-pressurized while nitrogen was being pumped into it. Appellant Collin McCleary alleged that the explosion, and his injuries, were caused by the negligence of CTL Corporation. McCleary appeals the trial court's summary judgment in favor of CTL.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

DCP Operating Company, LP was constructing the Red Bluff Loop Pipeline in West Texas. It contracted with Holloman Corporation to build the pipeline and with CTL to oversee the construction. Martin Smith was CTL's chief inspector for the project.

---

[1] The facts are taken from the parties' pleadings and summary judgment evidence. The facts are largely undisputed; the parties only disagree on whether those facts, as a matter of law, entitle CTL to summary judgment.

For the final stages of construction, Holloman hired N2 Solutions, LLC to apply a "nitrogen blanket"—pumping the pipeline with nitrogen to purge it of all oxygen. McCleary, an employee of WestAir Gases & Equipment, delivered the nitrogen to the Wink interconnect station. Using a "Y" connector, an N2 employee pumped the nitrogen from the truck into two segments of the pipeline totaling 110 miles, one branch going east towards the Roberts Ranch connection site and the other going west towards the Orla connection site. The Y connector was equipped with a pressure relief pop-off safety valve (PSV) on one side of the Y connector, the side that led to the Orla branch of the pipeline.[2] The Orla segment reached the desired pressure, and someone closed the entry point valve sealing the end of that section of the pipeline. An N2 technician also closed a valve on the Y connector because, as he testified, he did not trust the entry point valve. Closing that second valve isolated the PSV, so that it no longer detected pressure changes. Despite continuous pumping, the pressure reading for the Roberts Ranch segment of the pipeline remained at 0. The only pressure gauge at the Wink interconnect station was digital and required electricity to operate. To get a reading from that gauge, Smith turned on a generator. The generator powered all the equipment at the site, including the pipeline. In his deposition, Smith admitted that he went beyond his job responsibilities (inspecting and overseeing) by turning on the generator and powering up the site.

The pipeline was equipped with a safety feature which automatically closes gate valves when low pressure is detected.[3] Smith, as well as employees of Holloman and N2, testified that they did not know that the automatic system was installed on the pipeline. When Smith turned on

---

[2] When pressure reaches a designated point, the PSV will release air and make a loud noise to alert the crew that the pressure is approaching its limit.

[3] As was explained during oral argument, the safety feature is designed to prevent environmental leakage when the pipeline is operational. It assumes that a low-pressure reading is caused by a breach in the line and automatically closes valves to contain the gas.

the generator, the low pressure triggered this automatic system and the gate valves closed. N2 continued to pump nitrogen into what was now only 120 feet of pipeline instead of 110 miles. Because the PSV was isolated, there was no warning that pressure was dangerously high. About ten minutes after turning on the generator, the pipeline exploded. McCleary alleged that the explosion caused him hearing loss and injuries to his back and shoulder.

## II. PROCEDURAL BACKGROUND

McCleary filed a suit for negligence and gross negligence against CTL.[4] After discovery was conducted, CTL filed a combined traditional and no-evidence motion for summary judgment. In the no-evidence motion, it argued that McCleary had no evidence of any of the elements of negligence or gross negligence. In the traditional motion, CTL argued that, as a matter of law, two elements of McCleary's claims (duty and foreseeability) were conclusively negated. McCleary filed a response and summary judgment evidence, to which CTL objected. The trial court sustained CTL's hearsay objection to one of McCleary's summary judgment exhibits and granted both the traditional and no-evidence summary judgment motions.

McCleary raises two issues on appeal. In his first issue, he broadly argues that the trial court erred in granting CTL's motions for summary judgment. Specifically, McCleary asserts that the trial court erred in granting CTL's no-evidence motion for summary judgment because he provided evidence of each element of his negligence and gross negligence causes of action. He further argues that the trial court erred in granting CTL's traditional motion for summary judgment because CTL failed to conclusively disprove duty and proximate cause. In his second issue,

---

[4] McCleary's petition also asserted a claim for negligence per se. He abandoned that cause of action before summary judgment. McCleary included as defendants DCP Midstream, LLC, N2 Solutions, and Holloman Corporation. The trial court's summary judgment order states that his claims against all defendants other than CTL have settled or been dismissed.

McCleary challenges the trial court's order sustaining a hearsay objection to his summary judgment evidence.

## III. ANALYSIS

### A. Summary judgment

#### (1) Standard of review

A party may file a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). Once filed, the nonmovant has the burden to produce evidence raising a genuine issue of material fact on each of the challenged elements. *Id*.; *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We must sustain a summary judgment when the response and evidence show the following:

(a) a complete absence of evidence of a vital fact;
(b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;
(c) the evidence offered to prove a vital fact is no more than a mere scintilla;
(d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a necessary element is less than a scintilla and will not avoid a summary judgment. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

A party may move for traditional summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). When moving for summary judgment on the other party's claims, the defendant must

conclusively negate an element of the plaintiff's cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). The burden does not shift to the nonmovant to respond or produce evidence unless the movant meets her burden. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021).

We review summary judgments de novo. *Id.* In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). When the trial court does not specify in its order the ground on which it granted summary judgment, we must affirm if the judgment is proper on any ground. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

When the trial court grants both a traditional and a no-evidence summary judgment, we review the no-evidence grounds first. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) "[I]f the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion." *Id.*

### (2) No-evidence motion for summary judgment

The elements of a negligence cause of action are "the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The elements of gross negligence are the same as those of ordinary negligence plus a showing that objectively, the defendant's conduct "involve[d] an extreme degree of risk" and the defendant had "actual, subjective awareness of the risk." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11); *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 247 (Tex. App.—El Paso 2015, no pet.) ("Ordinary negligence is a prerequisite to establish gross

negligence."). CTL's motion alleged that McCleary did not have evidence of any of the elements of negligence or gross negligence. Therefore, if McCleary failed to raise a fact issue as to any one of these elements, CTL was entitled to summary judgment. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because it is dispositive, we first address the proximate cause element.

### (3) Proximate cause

"Proximate cause has two components: cause in fact and foreseeability." *Univ. of Texas M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 518 (Tex. 2019). An "act or omission" is a cause in fact if it "was a substantial factor in bringing about injury which would not otherwise have occurred." *Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). CTL does not dispute that the cause in fact element is satisfied. The automatic valve closures and explosion would not have happened had Smith not turned on the generator or ensured that the gate valves were locked in an open position. The point of contention in this case is the second component of proximate cause—whether the explosion was a foreseeable result. To meet the foreseeability component, "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985). "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In his brief on appeal, McCleary argues that the explosion was foreseeable because Smith knew that pipelines are commonly equipped with a system that automatically closes gate valves in low pressure situations and he did not ensure that the valves were locked in an open position.[5] But

---

[5] McCleary also asserts that "Smith knew that a low-pressure reading would cause the pipeline[] valves to close." Smith's testimony was more equivocal than this. He stated that, while he knew the automatic system was common, he did not know it was installed on this pipeline.

when we review a summary judgment, we are confined to the arguments and evidence that parties presented in the trial court. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c); *Aguilar v. Trujillo*, 162 S.W.3d 839, 854 (Tex. App.—El Paso 2005, pet. denied) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) (holding that a party could not "defeat the summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court"); *Blake v. Intco Investments of Texas, Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) ("[A]n appellate court is not free to search the entire record, including materials not cited to or relied on by the trial court."). To "expressly present" issues as required by rule 166a, the nonmovant's response "must fairly apprise the movant and the trial court of the issues the nonmovant contends should defeat the motion for summary judgment." *Shih v. Tamisiea*, 306 S.W.3d 939, 944 (Tex. App.—Dallas 2010, no pet.); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 119 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Nears v. Holiday Hosp. Franchising, Inc.*, 295 S.W.3d 787, 791–92 (Tex. App.—Texarkana 2009, no pet.).

We therefore turn to the arguments and evidence presented by McCleary in the trial court and review whether those expressly presented arguments and evidence regarding foreseeability. In the section of his summary judgment response pertaining to proximate cause, McCleary correctly recited that the proximate cause element requires evidence of both cause in fact and foreseeability. But the remainder of that section of his response discusses only cause in fact. Other than a general statement that foreseeability is a component of proximate cause, McCleary did not discuss foreseeability.

We have also reviewed the entire response, not just the section on proximate cause, for any arguments or evidence that the explosion was a foreseeable result of Smith's actions. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207–08 (Tex. 2002) (considering all sections of a response, including the facts section, when determining whether the nonmovant made the same arguments and relied on the evidence in the trial court that it did on appeal). No argument is made anywhere in the response that McCleary's injuries were foreseeable. In fact, the word "foreseeable" appears only once in the summary judgment response: in the general statement of law about what constitutes proximate cause. *Holloway v. Texas Elec. Util. Const., Ltd.*, 282 S.W.3d 207, 212 (Tex. App.—Tyler 2009, no pet.) (holding that a response failed to raise a fact issue when it did not include any discussion about the proximate cause element); *Plotkin v. Joekel*, 304 S.W.3d 455, 478 n.12 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (refusing to consider appellants argument on appeal when his summary judgment response did not make that same argument).

Not only did McCleary's response fail to argue why the explosion was foreseeable, it also failed to direct the trial court to the evidence he cites to us. McCleary attached summary judgment evidence to his response, including the entire deposition of Smith. Simply attaching evidence to a summary judgment response, however, is not enough to raise an issue of fact. To meet his burden, a nonmovant must direct the trial court to the specific evidence on which he relies; if he does not, the trial court must grant summary judgment.[6] *Aguilar v. Trujillo*, 162 S.W.3d 839, 855–56 (Tex. App.—El Paso 2005, pet. denied) (citing cases); *Narvais v. Anheuser-Busch, LLC*, No. 08-24-00037-CV, 2024 WL 4716260, at *5 (Tex. App.—El Paso Nov. 7, 2024, no pet.); *Burns v.*

---

[6] After the trial court granted summary judgment, McCleary filed a motion to reconsider. In that motion, he does reference specific portions of Smith's testimony that pipelines were commonly equipped with automatic valve closure systems. That motion was overruled by operation of law. McCleary has not raised the denial of his motion to reconsider as an issue on appeal.

*Canales*, No. 14-04-00786-CV, 2006 WL 461518, at *6 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, pet. denied) (mem. op.).

Below is the whole of the evidence that McCleary pointed to in his response:

- Smith's testimony that McCleary was a bystander and played no role in the explosion.

- A summary of the events that caused the explosion.

- A safety plan requiring employees to "assure that [blowing down piping] will not harm people and the environment" and "once piping is purged" to lock and tag "blow down valves."

- Smith's testimony that he knew that the generator operated everything on site, including the control panel that could be used to operate the valves.

- A summary of a third-party investigation that found that some of the "root causes" of the explosion were that "[s]top-job authority was not utilized" and "Contract Job Inspector took an affirmative action to start equipment and operate valves in order to obtain a pressure reading (performing work), instead of 'inspecting.'"

- Smith's testimony agreeing that he did not know at the time "that by turning that generator on, [the] gate valves [would] have closed" creating "an extremely dangerous situation."

- CTL's contract with DCP required it to comply with DCP's policies, rules, and requirements and to establish a "Site-specific written loss prevention safety program," "indoctrinate its Personnel . . . in such safety program . . ., monitor the safety habits of its Personnel, conduct frequent safety meetings, and perform routine safety inspections[.]"

- Smith's testimony that his role was chief inspector, and he was responsible for coordinating the work and making sure it met DCP's specifications.

While these deposition excerpts are evidence of some of the elements of negligence, none of this evidence addresses the fundamental question of the foreseeability element: should a person of ordinary intelligence in Smith's shoes have anticipated the general danger that would be caused by turning on a generator and energizing a pipeline. Crucially, nowhere in his summary judgment

9

response did McCleary point to the evidence he does now on appeal (that Smith knew that automatic trip systems were common features generally included on pipelines).

Because McCleary's summary judgment response did not expressly present an argument that the explosion was foreseeable or point to evidence of its foreseeability, "the evidence offered to prove a vital fact is no more than a mere scintilla" and CTL was entitled to summary judgment. *City of Keller*, 168 S.W.3d at 810.

### (4) Damages

McCleary's summary judgment response was similarly deficient in regard to damages. Damages are sometimes listed as part of the proximate cause element and sometimes as an independent element of negligence. *Compare W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (reciting negligence elements as "duty, a breach of that duty, and damages proximately caused by the breach"), *with JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 n.2 (Tex. 2021) ("The elements of negligence are duty, breach, causation, and damages."). Regardless of how the elements are grouped, "[a]n action for negligence cannot be maintained unless some damage has resulted therefrom." *Johnson v. Sovereign Camp, W. O. W.*, 83 S.W.2d 605, 608 (Tex. 1935), *overruled on other grounds by Doctors Hosp. Facilities v. Fifth Court of Appeals*, 750 S.W.2d 177 (Tex. 1988).

McCleary's summary judgment response does not address the issue of damages at all. In his appellate brief, he claims that because of the explosion, he had to have rotator cuff surgery and a fusion of his lumbar spine. However, he did not present any evidence of those injuries with his summary judgment response. The only summary judgment evidence that even mentions injuries is the "executive summary" which details the post-incident investigation. That portion of the document was not referred to in McCleary's summary judgment response and, even if it had been,

it is not evidence of McCleary's damages; it does not name McCleary, stating only that "other than two minor injuries, one of which was OSHA recordable, no significant injuries occurred from this incident." In his appellate brief, McCleary also points to medical records that were filed approximately 3½ years before his summary judgment response. If McCleary wanted the trial court to consider those medical records as summary judgment evidence, he had to at the very least refer to them in his response. *State v. Three Thousand, Seven Hundred Seventy-Four Dollars & Twenty-Eight Cents U.S. Currency*, No. 24-0258, 2025 WL 1415887, at *7 (Tex. May 16, 2025). He did not do so.

Because McCleary failed to meet his burden to produce more than a scintilla of evidence of foreseeability or damages, a no-evidence summary judgment was proper. We therefore overrule his first issue. Further, we therefore need not address McCleary's second issue regarding the admissibility of the executive summary because even considering the referenced portions of the document, the evidence was not sufficient to avoid summary judgment.

## IV. CONCLUSION

We affirm the trial court's grant of summary judgment.

MARIA SALAS MENDOZA, Chief Justice

June 11, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Palafox, J., concurring without written opinion